EDWARD BRENNAN and ROGER I. LINDUS, doing business as NIU SHOPPING CENTER, Movants-Appellees, *v.* STEWARTS' PHARMACIES, LTD., Respondent-Appellant

NO. 6137

MAY 25, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA
AND MENOR, JJ., AND CIRCUIT JUDGE KATO
IN PLACE OF KIDWELL, J., RECUSED

OPINION OF THE COURT BY KOBAYASHI, J.

This appeal is from an order of the trial court vacating and setting aside an arbitration award made pursuant to a rental dispute between appellant, Stewarts Pharmacies, Ltd. (hereinafter Stewarts) and appellees, Edward Brennan and Roger I. Lindus, doing business as Niu Shopping Center (hereinafter Shopping Center).

For the reasons stated hereinafter, we affirm the order of the trial court vacating the arbitration award.

### ISSUES

I. Whether Shopping Center's motion to vacate arbitration award is barred by the limitation provisions of HRS § 658-11.

II. Whether the arbitration panel exceeded its powers within the meaning of HRS § 658-9(4).

III. Whether the arbitrator appointed by Stewarts was evidently partial within the meaning of HRS § 658-9(2).

### STATEMENT OF THE CASE

On May 22, 1975, Shopping Center filed a motion to vacate arbitration award in the first circuit court of the State of Hawaii. On June 10, 1975, Stewarts filed its motion to confirm that same award. The court below ruled that Shopping Center's motion to vacate was not barred by HRS § 658-11.

After trial, the court vacated the Arbitration Award.

The court, in its Memorandum of Decision, made the following pertinent findings and conclusions:

*Findings:*

1. It is evident from the actions of the chairman of the arbitration panel that the landlord thought that the matter (of arbitration) was not over with until the formal award was issued in May (1975).

2. Mr. Carter, one of the arbitrators, was employed, initially, for a compensation, as negotiator for Stewarts to negotiate the second ten years lease rental with the landlord's agent, Hawaii Management Company.

3. Mr. Carter had a direct business relationship with Stewarts as Stewarts' negotiator immediately prior to his appointment as arbitrator by Stewarts, and also had a direct financial interest in the case.

4. None of the arbitrators did anything which could be classified as morally wrong, guilty of fraud or of dishonesty, but Mr. Carter was not an impartial arbitrator.

5. Stewarts and Shopping Center did not ask the arbitrators to go into the construction of the lease or to find a reason why the arbitrators could not set the fair rental.

6. Majority of the arbitrators reached their conclusion of the monthly rental without any consideration of what is fair market value or anything else and did not decide the question submitted to them, to-wit: fair monthly rental.

*Conclusions:*

1. The motion to vacate the arbitration award is not barred by the limitation provisions of HRS § 658-11.[1]

    a. The 10-day limitation provided in HRS § 658-11 runs from the day an award by the arbitrators, conforming to the requirements of HRS § 658-8[2], is made and served.

2. The only dispute submitted to the arbitrators was to determine the question of "fair monthly rental" and matters necessary thereunto, that is matters "intertwined therewith".

3. The award must be set aside for the reason that the arbitrators went beyond their powers, and failed to de-

---

[1] HRS § 658-11 reads:

    Notice of motion to vacate, modify, or correct; stay. Notice of a motion to vacate, modify, or correct an award, shall be served, in the manner prescribed for service of notice of a motion in an action, upon the adverse party or his attorney within ten days after the award is made and served. For the purposes of the motion any judge who might make an order to stay the enforcement of a judgment, in an action brought in the same court, may make an order to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award. The record shall be filed with the motion as provided by section 658-13.

[2] HRS § 658-8 provided in pertinent part:

    Award; confirming award. The award shall be in writing and acknowledged or proved in like manner as a deed for the conveyance of real estate, and delivered to one of the parties or his attorney. A copy of the award shall be served by the arbitrators on each of the other parties to the arbitration, personally or by registered or certified mail. . . .

termine the question of "fair monthly rental", in violation of HRS § 658-9(4)[3].

4. Mr. Carter, the arbitrator appointed by Stewarts, could not possibly serve as an impartial arbitrator within the meaning of HRS § 658-9(2)[4].

5. A business interest relationship existed between Stewarts and Mr. Carter, in violation of the provisions of HRS § 658-9(3)[5].

## STATEMENT OF FACTS

By a sublease dated July 22, 1964, Shopping Center, as landlord, subleased to Stewarts, as tenant, 10,430 square feet of shopping center space at a monthly rental of $2,638.25. The space was entirely unimproved loft space. The term of the lease was twenty years. Rent for the first ten-year period was fixed at a flat rate of $0.25 per square foot per month. Rent for the second ten-year period was to be agreed upon in writing by the parties, or failing agreement, then by arbitration.[6]

---

[3] HRS § 658-9(4) reads:

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.

[4] HRS § 658-9(2) reads:

(2) Where there was evident partiality or corruption in the arbitrators, or any of them.

[5] HRS § 658-9(3) reads:

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced.

[6] The lease provides in pertinent parts of paragraph No. (36), Arbitration, as follows:

A. *Rent*

For the last ten (10) year period the monthly rent shall be such as is agreed upon in writing between the Landlord and Tenant, or, if they shall fail to agree on the monthly rent for such period at least ninety (90) days prior to the commencement of such period, such monthly rent shall be determined by arbitration as

The obligations of the parties under the lease were subsequently modified by letter agreements which specified that none of the provisions of the lease pertaining to percentage rent would apply; that the term of the lease would be from March 1, 1965, through February 28, 1985; that the monthly rent for the first 10-year period shall be $2,607.50; that the blanks contained in the lease were intentionally left blank; and that improvements in the leased premises would be made at the tenant's expense. Title to the improvements passed to the landlord upon installation.

Stewarts testified that Shopping Center needed a drugstore operation, along with a large supermarket, as an anchor tenant to insure patronage from the surrounding area and attract other Shopping Center tenants; and that, by paying $0.25 per square foot per month Stewarts would be able to

---

hereinafter provided. If determined by arbitration, the monthly rent shall be such sum as is determined to be a *fair monthly rent* on the demised premises, but shall in no event be less than the monthly rent for the immediately preceding sublease period. (Emphasis added.)

. . . .

*In the event the Landlord and the Tenant are unable to agree upon the meaning or effect of any term, provision, covenant or condition of this sublease,* or if any dispute or disagreement arises between the Landlord and the Tenant concerning this sublease or performance hereunder or the use and occupation of the premises, either party may, *or if the Landlord and the Tenant are unable to agree upon the monthly rent to be paid* during the last ten (10) year period of this sublease at least ninety (90) days prior to the commencement of such period, the parties shall have the matter determined by arbitration as follows:

The party desiring to have the matter submitted to arbitration shall serve the other party with written notice of his desire so to do, naming the arbitrator selected by him; within fifteen (15) days after receipt of said notice, the other party shall notify the first party in writing of the name of the arbitrator selected by the second party. The two arbitrators thus selected shall within fifteen (15) days select a third arbitrator, . . . and *the three arbitrators so appointed shall thereupon proceed to determine the matter upon which the parties have disagreed* and the decision of any two of them shall be final, conclusive and binding upon the Landlord and the Tenant, unless vacated, modified or corrected as provided by Chapter 188, Revised Laws of Hawaii 1955, as the same may be amended. All expenses of arbitration shall be evenly divided between the Landlord and the Tenant, except that each party shall pay his own attorney's and witness' fees, if any. (Emphasis added.)

amortize the costs of improving its loft space over the term of the lease. Neither the lease nor the letter agreements modifying the lease express the intent of the parties regarding the period over which these costs were to be amortized.

As part of the improvements, Stewarts subdivided the leased space into three separate units. One unit consisting of 2,712 square feet was sub-leased from Stewarts to Stewarts Properties, Inc., a separate Hawaii corporation, for use as a coffee shop (hereinafter Coffee Shop). A second unit containing 2,960 square feet was sub-subleased to Y.T.S., Inc., operating as The Sty Restaurant (hereinafter The Sty). The lease between Shopping Center and Stewarts provided that Stewarts could not use "the demised premises for the conduct of any business except that of a drug store," and that Stewarts could not sublease any part of the premises demised to it without Shopping Center's written permission. Despite these provisions, Coffee Shop is still operated by Stewarts Properties, Inc. Written permission for The Sty from Shopping Center was granted. However, Shopping Center did not grant a written permission for Coffee Shop, though Shopping Center continued to accept rental from Stewarts without stating any objection.

Stewarts retained the remainder of the space and operated a pharmacy therein. Stewarts collected rents from Coffee Shop and The Sty. Stewarts charged Coffee Shop approximately $0.25 per square foot per month, and The Sty approximately $0.38 per square foot per month. Stewarts retained the difference between these rents and the rent it paid to Shopping Center.

Stewarts suffered losses in its pharmacy operation at Shopping Center in all but one of its first ten years. Because Stewarts wanted to sell the unprofitable pharmacy and also fix the 1975-1985 rent for its own two tenants, Robert A. Stewart, president of Stewarts, began negotiations in late 1973 with Edward Brennan, managing partner of Shopping Center, concerning Stewarts' rent for the second ten-year period of its lease.

In early 1974 Stewarts hired Carter "to represent Stewarts Pharmacies, Ltd., in negotiations with its landlord

of property that it leases from the Shopping Center.''[7] Carter proceeded to study the Stewarts-Shopping Center sublease, Stewarts' financial statements, the relationship between landlord and tenant, and the area surrounding Shopping Center to determine the extent of the market. Carter testified that he had been an arbitrator 40 or 50 times previously. He testified that his understanding of his role, once appointed by one of the parties as arbitrator, based on his past experiences in Hawaii, was that:

. . . he first attempts to mediate the dispute or misunderstanding between the landlord and the tenant. Lacking success in those efforts, the two [party-appointed arbitrators] proceed with the appointment of a third member of the Board of Arbitration. And the matter is completed by either a unanimous or two-to-one vote.

Hawaii Management Company was Shopping Center's rental agent and Powell, for Hawaii Management Company, was in charge of the account.

On June 10, 1974, Mr. Stewart, together with Carter, met with Powell in an attempt to negotiate the rent. On June 12, 1974, Stewarts informed Powell that it was invoking arbitration, as provided in the lease, and named Carter as its arbitrator.

On August 19, 1974, Shopping Center appointed Donald Graham as its arbitrator and informed Stewarts of Graham's appointment. Within a few days of his appointment Graham suggested George A. Henrickson and Carter agreed. Both

---

[7] A letter from Mr. Stewart to Carter, dated March 29, 1974, confirmed Carter's employment. Carter endorsed the letter on April 2, 1974. The letter provides in its entirety:

You are authorized to represent Stewarts' Pharmacies, Ltd. in negotiations with it's landlord of property that it leases in the Niu Valley Shopping Center. While rental adjustment is not due until March 1, 1975, the terms of our lease do not seem to preclude that adjustment, if any, may be agreed upon at this time. It is important to our plans that we know what the rental for the ten year period March 1975 to March 1985 is to be at your earliest convenience.

If you are not successful in negotiating a satisfactory adjustment for us please press for the necessary determination by arbitration as provided in the lease. For this purpose you are hereby appointed to represent us.

Graham and Henrickson were experienced in real estate matters but neither had any prior experience with arbitration. Neither was aware until the arbitration process was concluded that Carter had initially been employed by Stewarts, as its representative and negotiator, to negotiate with Shopping Center, the amount of monthly rental for the second 10 years of the lease.

In a memorandum dated November 4, 1974, prepared by Carter and addressed to and directed to Henrickson, with a copy of the memorandum delivered to Graham's office, Carter stated, *inter alia*, as follows:

The original landlord and property manager is not the same as at the present time. The tenant feels that the present management has been less than cooperative and on the contrary has an affirmative policy of harassment directed against him to his disadvantage.

. . . . .

Based solely upon the language of the lease I hereby offer to Niu Shopping Center to continue to pay for the second ten year period the same rental agreed upon between the parties for the first 10 years for the space occupied by the pharmacy.

Justification for this offer is contained in the following language of the lease:

. . . .

3) Page 25 [paragraph no.] (37) "The landlord and the tenant have established the minimum rent on the basis of the value of the building and facilities which the landlord will provide and also the landlord's current known estimated costs in connection with operating the entire shopping center with a view toward providing a certain return to the landlord upon the landlord's investment . . . ."

. . . .

In the subject case the tenant has lost money each and every year of his occupancy . . . . There is no justification within the terms of the lease for an increase over the contractual rate for the first period under the language of paragraph 25 quoted in #3 above. The rental offered

provides an acceptable return to the landlord. There is no justification to increase the losses of the tenant in order to increase the return of the Landlord upon his investment.

. . . .

As to the area [leased premises, reserved by Stewarts for its drug store] for which the use is restricted, it is my position that the only comparable that can be properly used is that of a drug store serving a community of approximately 600 homes with an estimated population of 2,750 persons and situated in a heavily travelled through-way. Frankly, I have not been able to find one, and I doubt that one is available . . . .

. . . .

I assume that in as much as the owner waived the restriction as to use as set forth in the original transaction as to the remainder of the space not occupied by the drug store that we are entitled to evaluate the space as if it were unencumbered. The same standards of comparison as to area served, size of center and remoteness from major population centers still, of course, apply. I do not consider the Stewart's Properties lease an arms length transaction for Mr. Stewart Sr. is part owner of the property company and sole owner of the Pharmacy. However, the sublease to The Sty is an arms length transaction. . . . Basic rental is therefore at the rate of 38.265¢ per square foot per month for the improved space.

. . . .

. . . The sublessor provided the necessary wiring, plumbing, partitions, ceiling, air-conditioning and sublet a portion of the improved space for 38.265 per square foot. To the best of my knowledge there is no comparable situation within the immediate vicinity.

The arbitrators met informally on December 19, 1974. They established the ground rules for a hearing to be held the next day wherein each party was to be afforded an opportunity to present his case to the arbitration panel. In addition, both of the party appointed arbitrators presented their tentative respective positions regarding the rent. Carter, again

based on (1) his interpretation of the various terms of the lease; (2) Stewarts' losses in the pharmacy; and (3) demographic data, urged continuation of the present rent. Graham, based on market comparables from other Oahu shopping centers, proposed the rent be set at either: (1) $0.72 per square foot per month for the first five years of the 10-year period, or (2) a minimum of $0.61 per square foot per month against 6% of gross sales; and that the rent be increased to $0.94 per square foot per month for the second five years.

The panel convened the formal arbitration hearing on December 20, 1974. Besides the three panel members, Mr. Stewart was present and represented Stewarts, while Powell attended the hearing, and represented Shopping Center. Henrickson, as chairman of the panel, informed everyone present that the purpose of the meeting was to conduct a formal hearing regarding arbitration of the rental dispute. Messrs. Stewart and Powell made their presentations and left. The arbitrators continued to discuss the information presented. Henrickson, the chairman, concluded the hearing by stating that he would "write something up" and if either Carter or Graham had anything additional, they should submit it to him. Graham promised to provide Henrickson a copy of a nationwide guide to comparable rents in other shopping centers. Graham testified that he assumed further meetings would be held.

During the first week of January, 1975, Henrickson drafted a memorandum to Carter and Graham regarding the work of the panel.[8] On January 7, 1975, Carter reviewed a

---

[8] The memorandum provides in its entirety:

The monthly rental for the period February 1, 1974 to and including February 28, 1984, contained in that certain sublease dated 22nd day of July 1964, by and between Edward Brennan, F. H. Lindus and Charles J. Pietsch, Jr. has been referred to a panel of arbitrators for determination as provided for in the lease. The arbitration panel is composed of the following:

Fred B. Carter III selected by Tenant

D. H. Graham, selected by Landlord

G. A. Henrickson selected by the two arbitrators

*Findings of Fact*

1. The lease dated July 22, 1964 was properly executed by all parties with certain deletions agreed upon by both parties in the form lease. These deletions

copy of the memorandum and signed on the bottom, "I concur, F. B. Carter, January 7, 1975." On January 9, 1975, Graham, after a review of the memorandum, responded:

> Your memorandum of January 6 to Fred Carter III and me regarding Stewarts has been received. For the record, you should know that I do not concur with the conclusions of what appears to be the majority of the panel and do not agree that the monthly rent for Stewarts for the ensuing 10 years should be the same as for the previous 10 years.
>
> It is obvious that this was not the intent of either of the parties when the original lease was entered into. If that

---

include portions of paragraph (39) page 27 *Landlord's right to terminate sublease* and paragraph (41) *Option to Extend*.

2. By letter dated April 15, 1964 from Stewarts' Pharmacies, Ltd. to Niu Shopping Center, both parties agree . . . "that no portion of the sublease pertaining to percentage/rent shall apply."

3. The Landlord has formally consented to a sublease of a portion of the demised premises between Stewarts' Pharmacies, Ltd. as Sublessor and Y. T. S. Inc., as Sublessee.

4. The Landlord has not formally consented to a sublease of a portion of the demised premises between Stewarts' Pharmacies, Ltd. and Stewart Properties, Inc.; however, the Landlod has received and accepted monthly rental directly from Stewart Properties, Inc.

5. The demised premises of 10,430 sq. ft. sublet by the Landlord to the Tenant is now divided into the following areas:

| | |
|---|---:|
| Stewarts' Pharmacies, Ltd. | 5,787 sq. ft. |
| Stewart Properties, Inc. | 2,712 sq. ft. |
| Y. T. S. Inc. | 1,931 sq. ft. |
| | 10,430 sq. ft. |

6. The Sublease contains a covenant restricting the use of the demised premises for the conduct of any business except that of a drug store. The Landlord agrees in the covenant not to permit any other drug store to be erected on the land demised by the Master Lease.

7. The Sublease contains a covenant providing for the Tenant to pay any excess excise tax the Landlord is required to pay over 3½% in order to "give the Landlord the same net return after payment of such tax as the Landlord would have realized had the 3½% rate continued in force."

8. The monthly rent for the first ten (10) year period was established as $2,638.25 per month or $.253 sq. ft.

9. The Sublease provides for arbitration, should the Landlord and Tenant fail to agree amongst other items, on the monthly rent to be charged for the second ten (10) years.

had been the intent, the parties would have settled on a 20-year term at a fixed minimum rent in the first place.

I am appalled at the line of reasoning which would lead to the conclusion that the same rent should be continued for the next 10 years. However, I defer to the judgment of the majority.

Henrickson did not send a copy of the memorandum to either Shopping Center or Stewarts. He did, however, send a copy to Hawaii Management Company. This copy did not include Carter's concurrence. On January 7, 1975, Henrickson sent a bill for his services as arbitrator to both Stewarts and Hawaii Management Company.

Henrickson testified that the memorandum dated January 6th was the final resolve of the arbitration panel. He further

---

10. The Landlord and Tenant cannot agree on the monthly rent to be paid by Tenant for the second ten (10) year period and therefore have agreed to the arbitration.

#### Conclusion of Panel

1. The panel has found that all provisions of the lease have been satisfied by both Landlord and Tenant.

2. The panel has agreed that the determination of the monthly rent is to be fixed without regard to percentage rate on gross sales generated by the Tenant on the premises.

3. The panel has agreed that the Tenant has a recognizable sandwich lease position in all subleases in the demised premises.

4. The panel has agreed that the provisions of the lease makes the establishment of rental by comparison with other shopping center leases impossible. The provisions of the lease also refers to . . . "a certain return to the Landlord's investment" in establishing the minimum rent initially based on the value of the building and facilities which the Landlord provided the Tenant.

5. The lease does not permit the establishing of a monthly rental which is less than the previous period's monthly rental.

Conclusion:
Based on the language of the lease which does not permit a use of percentage rents and which does establish the minimum rent for the initial period of the lease term on the basis of a certain return to Landlord of the value of the building and facilities, the panel concludes that no increase in the monthly rental due under the lease is justified. By the provision of the lease no reduction in the monthly rental is permitted.

Therefore the panel concurs that the monthly rent payable by Tenant to Landlord under that lease dated 22nd day of July 1964 by and between Edward Brennan, F. H. Lindus and Charles J. Pietsch, Jr. and Stewarts' Pharmacies, Ltd. for the period from March 1, 1974 to February 28, 1985 shall be $2,638.25 net.

testified that he was unaware of the modification of the monthly rental which was reduced to $2,607.50 by a letter agreement between the parties. Thus, the resultant discrepancy occurred in the amount of monthly rental in both of the award documents from the actual monthly rental paid during the first 10 years of the lease.

Brennan, Shopping Center's managing partner, testified that he met by chance with Henrickson some time near the end of January. They were long time associates, both being active members of the same political party. Brennan claimed that Henrickson informed him of the conclusion reached by the arbitration panel and the reasoning leading to that conclusion. Brennan expressed his surprise, stating that the Stewarts lease was a standard form he used with many tenants at Shopping Center and this was the first time anyone had concluded that the lease provisions precluded a rental increase. Brennan testified that Henrickson told him that the matter was not final and that no decision had been made. Henrickson testified that he could not recall the chance meeting, but had never said anything to Brennan to indicate that the decision of the arbitration panel was still open.

Also near the end of January, Alan Beall, president of Hawaii Management Company, telephoned Graham. He requested that Graham arrange a meeting with Henrickson, James Wriston (Brennan's attorney), Graham, someone representing Stewarts, and Beall. Henrickson agreed to the meeting. Henrickson notified Carter of the meeting which would take place on February 4, 1975. Carter at first agreed to attend but later refused. He replied in a memo to Henrickson dated January 29, 1975, stating:

> Thanks for your invitation to a meeting with you and representatives of the Niu Shopping Center for the purpose of discussion "before finalizing" the recent arbitration award. I accepted your invitation before consultation with my client, but I now concur with him that there is no possible purpose for the proposed meeting for the good and sufficient reason that the matter has already been finalized. We — Mr. Stewart and I — therefore, decline the invitation as it was expressed to me.

I might point out that if the arbitration award had not been in favor of my client it is his understanding that he has no right to ask the arbitrators to change their minds. Presumably the same principal applies to the Landlord.

At the February 4th meeting, Wriston stated that the conclusion reached by the panel as contained in the January 6th memorandum was erroneous because it was based upon a misinterpretation of the lease. He suggested that Henrickson consult with an impartial attorney on that point. Henrickson agreed to meet with Walter Bliss. That meeting took place on February 19, 1975, in Bliss' office. It was attended by Bliss, Graham and Henrickson. Carter was invited but did not attend. At the meeting Bliss expressed his opinion that the lease did not preclude a rent increase; that the arbitrators should consider comparables in determining the fair monthly rent; that they should consider that Stewarts rented loft space, not an improved store; and that the profitability of the drug store, or lack of it, was not a factor.

In early March Brennan and Henrickson had a luncheon meeting to discuss their political activities. Brennan testified that Henrickson indicated at that time that he believed that the interpretation of the lease expressed by Bliss was probably correct and asked Brennan if he felt a rent of $0.45 per square foot per month would be acceptable. Brennan said that it was not. Henrickson testified that the $0.45 figure was mentioned by Brennan. He claimed that Brennan stated he could have settled with Stewarts for $0.45. Brennan testified that Henrickson agreed that the arbitrators could have settled on that figure also. But Henrickson denied ever stating that he believed at the time the rent should be increased.

Brennan and Henrickson met again on April 2, 1975, at a political meeting. Brennan testified that Henrickson said that he had decided to reconvene the arbitration panel. Henrickson denied making any statement to that effect.

On May 1, 1975, E. Gunnar Schull, Mr. Stewart's attorney, wrote to Messrs. Carter, Graham and Henrickson explaining that he had enclosed an arbitration award to be

signed by the three.[9] He explained that HRS § 658-8, *supra* note 2, required that "the award shall be in writing and acknowledged and proven in like manner as a deed for the conveyance of real estate." He also explained that once they had signed the award, copies would be forwarded to the parties and Stewarts would move for judicial confirmation of the award. Henrickson and Carter signed the award on May 12 and May 14, respectively. Each party received a copy of that award, bearing the acknowledged signatures of Carter and Henrickson.

## OPINION

I. WHETHER APPELLEE'S MOTION TO VACATE ARBITRATION AWARD WAS BARRED BY HRS § 658-11.

The trial court ruled that Shopping Center's motion to vacate arbitration award was not barred by HRS § 658-11, *supra* note 1. The court concluded that the formally acknowledged arbitration award of May constituted the final award by the majority of the arbitrators, and not the memorandum of award dated January 6th.

We agree with the trial court's conclusion.

---

[9] The document, entitled "Arbitration Award", states in its entirety:

That in accordance with paragraph A of that certain unrecorded Indenture of Sublease (the "Sublease") dated July 22, 1964 by and between Edward Brennan, F. H. Lindus and Charles J. Pietsch, Jr. (the "Landlord") and Stewarts' Pharmacies, Ltd. (the "Tenant") providing that the monthly rent for the ten-year period March 1, 1975 to February 28, 1985 shall be determined by arbitration in the event the parties fail to agree on the monthly rent, and, the Landlord and Tenant having failed to agree upon said monthly rent, and the Tenant having selected Fred B. Carter III as an arbitrator and the Landlord having selected D. H. Graham, Jr. as an arbitrator and the two arbitrators having selected G. A. Henrickson as the third arbitrator and after hearing representatives of the Landlord and the Tenant on the matter and G. A. Henrickson and Fred B. Carter III, two of the three arbitrators, having agreed on a decision, the arbitrators hereby make the following decision and award:

The monthly rental for the ten-year period March 1, 1975 to and including February 28, 1985 under paragraph A of the Sublease shall be $2,638.25.

The record contains sufficient evidence[10] in support of the trial court's finding that the conduct of Henrickson, chairman of the arbitration panel, led Shopping Center to believe that the arbitration in question was not finalized until the May award.

The issue, therefore, is not whether formal acknowledgments are necessary or not, as argued by the parties herein, though it is obvious that the January award did not technically comply with the provisions of HRS § 658-8, *supra* note 2. The question herein which was determined by the trial court is whether the arbitrators had concluded their consideration of the issue submitted to them and reached a resolve by the memorandum of award of January or by the arbitration award of May.

## II. WHETHER THE ARBITRATION PANEL EXCEEDED ITS POWERS WITHIN THE MEANING OF HRS § 685-9(4).

The trial court concluded that the arbitration award must be vacated upon the ground that majority of the arbitrators exceeded their powers and also failed to decide the question that was submitted to them.

We agree with the opinion of the trial court and hold that the majority of the arbitrators violated the terms of HRS § 685-9(4), *supra* note 3. *Mars Constructors, Inc. v. Tropical Enterprises, Ltd.*, 51 Haw. 332, 460 P.2d 317 (1969).

The record shows clearly that Henrickson and, especially, Carter, believed that it was part of their duties as arbitrators to initially construe the meaning of the various provisions of the lease agreements. Thereafter, they concluded that monthly rental for the second ten years of the lease, based on their interpretation of various provisions in the lease, could not be increased. They also concluded that

---

[10] HRCP, Rule 52(a) reads:
    (a) Effect. . . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. . . .
Cain v. Cain, 59 Haw. 32, 575 P.2d 468 (1978); Lai v. Kukahiko, 58 Haw. 362, 569 P.2d 352 (1977).

Stewart's financial losses should not be increased by an increased monthly rental.

We are of the opinion that the majority of the arbitrators failed to comprehend their duties as arbitrators, and utterly failed to determine the limited question submitted to the arbitrators for resolve, to-wit: fair monthly rental. The majority of the arbitrators clearly exceeded their powers as arbitrators herein by construing the meaning of the various provisions in the lease agreement when, in fact, they did not have the duty and or power, as arbitrators, to so construe the lease provisions.

III. WHETHER CARTER, THE ARBITRATOR APPOINTED BY STEWARTS, WAS· EVIDENTLY PARTIAL WITHIN THE MEANING OF HRS § 658-9(2), *SUPRA* NOTE 4.

We agree with the trial court's conclusion that Carter "could not possibly serve as an impartial arbitrator within the meaning of HRS Section 658-9".[11] We are of the opinion that, based on the record, Carter was clearly, evidently partial to Stewart — and not only sympathetic to Stewarts' needs and contentions.

Where an arbitrator, though appointed by the party, identifies·himself personally with his party and with his party's prejudices and needs, as herein, the conclusion is unavoidable that, the arbitrator has lost sight of his duty as an arbitrator, and is unable to act as an arbitrator. *Gaines Construction Co. v. Carol City Utilities, Inc.*, 164 So.2d 270 (Fla. App. 1964); *Noffsinger v. Thompson*, 98 Colo. 154, 54 P.2d 683 (1936); *Central Union Stock Yards Co. v. Uvalde Asphalt Paving Co.*, 82 N.J.Eq. 246, 87 A. 235 (1913); 56 A.L.R.3d 697 § 8[c].

Affirmed.

*Edward A. Jaffe (J. Kowen* with him on the briefs; *Cades Schutte Fleming & Wright* of counsel) for respondent-appellant.

*Clinton R. Ashford (Cuyler E. Shaw* with him on the brief; *Ashford & Wriston* of counsel) for movants-appellees.

---

[11] A review of the legislative history of HRS § 658-9 fails to provide us with any insight as to the meaning of the phrase "evidently partial".