**Donald F. TAYLOR, Plaintiff,**

v.

**Willie NELSON, et al., Defendants.**

**Civ. A. No. 80–0295.**

United States District Court, W.D. Virginia.

Aug. 19, 1985.

Charles L. Williams, Jr., Gentry, Locke, Rakes & Moore, Roanoke, Va., for plaintiff.

Robert C. Osterberg, Abeles Clark & Osterberg, New York City, Dudley F. Woody, Woods, Rogers & Hazlegrove, Roanoke, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

This case is before the court on the plaintiff's Motion to Vacate Arbitration Award pursuant to 9 U.S.C. § 10 and on the defendant's Motion to Confirm Arbitration Award pursuant to 9 U.S.C. § 9.[1] The arbitration award at issue was entered in favor of the defendant, Willie Nelson, on September 11, 1984 by the American Federation of Musicians.[2] The parties have submitted numerous briefs and affidavits, the court has heard oral arguments, and the matter is now ripe for a decision.

## HISTORY OF CASE

On September 26, 1980, the plaintiff commenced this breach of contract action against the defendant Nelson and others. On December 15, 1980, Nelson moved for a stay of that action pending arbitration pursuant to the contract, which provided:

> In accordance with the Constitution, By-Laws, Rules and Regulations of the Federation, the parties will submit every claim, dispute, controversy or difference involving the musical services arising out of or connected with this contract and the engagement covered thereby for determination by the International Executive Board of the Federation or a similar board of an appropriate local thereof and such determination shall be conclusive, final and binding upon the parties.

On August 2, 1982, this court denied Nelson's motion for a stay. That order was appealed to the United States Court of Appeals for the Fourth Circuit on August 13, 1982. On November 15, 1982, the fourth circuit reversed and stayed the trial of the contract action until arbitration could be had.

The arbitration began on March 20, 1984 before the executive board of the AFM, which rendered a decision on September 11, 1984. The decision was in favor of the defendant Nelson.

On September 21, 1984, Nelson petitioned the Supreme Court of the State of New York for a judgment confirming the arbitration award. Taylor opposed the motion and, by way of cross-motion dated November 16, 1984, sought to have the petition dismissed on the grounds that the underlying contract action was pending before this court and that the New York court did not have jurisdiction. Taylor's cross-motion was granted and Nelson's petition was dismissed by an order dated January 28, 1985 and filed February 1, 1985. Judgment was entered on that order on March 8, 1985, and was filed on March 11, 1985.

On February 12, 1985, Taylor moved to have the arbitration award vacated.

## NELSON'S MOTION TO CONFIRM PURSUANT TO 9 U.S.C. § 9

■ The Federal Arbitration Act at 9 U.S.C. § 9 provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

The defendant asserts that this section expressly mandates the confirmation of the arbitration award in this case in that the parties have agreed to the entry of judgment upon the arbitration award, the application to confirm has occurred within one year of the award, and the order has not yet been vacated, modified or corrected. This, however, fails to recognize that the

---

**1.** The defendant also seeks an order dismissing this action pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure, alleging · that, once the arbitration award is confirmed, there no longer exists any claim upon which relief can be granted.

**2.** The American Federation of Musicians (AFM) the defendant Nelson's union. The plaintiff is not a member of the AFM.

plaintiff's motion presently before this court is for the specific purpose of having the arbitration award vacated as prescribed in section 10. Nowhere does the Act require this or any court to summarily confirm an arbitration award which is also before the court on a motion to vacate which alleges bias, prejudice and evident partiality.

## TIMELINESS OF MOTION TO VACATE

■ Section 9 U.S.C. § 12 provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." As previously stated, Taylor's motion to vacate was filed in this court on February 12, 1985, more than five months after the award was rendered. However, from late September, 1984, through the first week in February, 1985, Taylor was challenging the intervening state court proceeding which was brought by the defendant in New York. It was this New York proceeding which delayed the filing of the motion to vacate in this court, and it would be inequitable to allow Nelson now to assert the three-month period to bar Taylor's motion to vacate. Therefore, the three-month period should be tolled beginning November 16, 1984 when Taylor served his Cross-Motion in the New York proceeding. That time being tolled, Taylor's motion to vacate was filed within the three-month statutory period.

Furthermore, as stated in *Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir.1984), the three month period is designed to encourage parties to an arbitration to move expeditiously through the judicial system. There is no evidence in this case that Taylor has failed to move as expeditiously as possible throughout the litigation. In fact, Taylor has acted with all due diligence with respect to his efforts to vacate the arbitration award. To bar Taylor's motion to vacate would ignore that Nelson had timely notice of Taylor's intent to challenge the award. Such a result would be manifestly unfair and unwarranted.

The application of tolling pending the outcome of the New York proceeding and the application of the "due diligence exception," *Holodnak v. Avco Corporation*, 381 F.Supp. 191 (D.Conn.1974), *reversed in part on other grounds*, 514 F.2d 285 (2d Cir.), *cert. denied*, 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975), precludes a finding by this court that Taylor's motion to vacate was not timely filed.

## LAW OF THE CASE

■ Nelson also argues that the doctrine of the "law of the case" compels this court to find that Taylor's motion to vacate should be denied. According to that doctrine, once an issue has been decided, explicitly or by necessary implication, by the appellate court, the lower court may not "vary it or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error. ." *In re Sanford Fork & Tool Company*, 160 U.S. 247, 16 S.Ct. 291, 40 L.Ed. 414 (1895). *See also Stamper v. Baskerville*, 724 F.2d 1106 (4th Cir.1984). For the doctrine to apply, therefore, the appellate court must have addressed and decided the issue. Nelson maintains that the fourth circuit in staying proceedings in this court pending arbitration "in accordance with the terms of the arbitration clause in the contract at issue" necessarily ruled on the issues of adhesion and evident partiality. In ordering the stay, however, the fourth circuit restricted itself to a determination that the contract had an arbitration provision in it and that it had not been complied with. This limited review is apparent from the fourth circuit's opinion in the matter, which states:

this court recently observed that a federal court confronted with a motion to stay its proceedings pending arbitration under such a contract must only be satisfied of '(1) the making of the agreement to arbitrate and (2) the breach of the agreement to arbitrate' to find itself under compulsion of the Act to grant the motion.

The fourth circuit did not address or decide the issues of adhesion or evident partiality.

There is no reference or discussion whatsoever of these issues in its opinion. Therefore, the doctrine of the "law of the case" is inapplicable to the motions presently before this court.

## ADHESION AND EVIDENT PARTIALITY

Arbitration by agreement of the parties is welcomed and encouraged by Congress and by the courts. As the United States Supreme Court has stated, however, what is encouraged is not merely arbitration, but impartial arbitration. *Commonwealth Coatings Corporation v. Continental Casualty Company*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). Therefore, the United States Arbitration Act, 9 U.S.C. § 10, provides for vacation of an award "where there was evident partiality or corruption in the arbitrators, or either of them."

■ Nelson argues, citing *International Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548 (2d Cir.1981), that federal law does not read "evident partiality" in section 10 to include "appearance of bias." The narrow holding in *Rosshavet*, however, dealt with a situation very different from the one now before this court. *Rosshavet*, a maritime arbitration case, involved what the second circuit referred to as "speculation without substance." This court is not persuaded that *Rosshavet* should be so broadly interpreted or applied as, in effect, to overrule the holding in *Commonwealth Coatings*. In that case, the United States Supreme Court clearly stated:

> ... any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another.

393 U.S. at 150, 89 S.Ct. at 340.

It is difficult to imagine an arbitration board which could more "reasonably be thought biased against one litigant and favorable to another" than the Executive Board of one party's union. The argument made here by the defendant, that *actual* impartiality or bias must be shown, was also made by the dissenters in *Commonwealth Coatings* and rejected by the majority. It is also rejected by this court.

■ The AFM contract pursuant to which the arbitration in this case was held was a form contract prepared by the AFM. AFM members such as the defendant may only perform concerts pursuant to an AFM contract. Any promoter desiring to contract for a performance by an AFM member had to enter into the AFM contract. The only AFM contract available to Taylor contained no choice regarding the forum for arbitration; the sole forum permitted was an arbitration conducted by the International Executive Board of the AFM. When it became evident that an arbitration would be required, Taylor requested that the AFM allow that arbitration to be before the American Arbitration Association.[3] This request, along with a request that the hearing take place in Roanoke, Virginia, was refused. Such evidence points clearly to the fact that Taylor "was required by the realities of his business as a concert promoter to sign A.F. of M. form contracts with any concert artist with whom he wished to do business." *Graham v. Scissortail, Inc.*, 28 Cal.3d 807, 623 P.2d 165, 171 Cal.Rptr. 604 (En Banc, 1981).

When, as here, the contract requiring arbitration is a form contract which smacks of adhesion, the court must scrutinize that contract with particular care in order to ensure that "certain minimum levels of integrity" are maintained. *Id.*, at 824–825, 623 P.2d at 176, 171 Cal.Rptr. at 615. Two separate state courts have reviewed the identical arbitration procedure at issue here and found it to be unconscionable. In each case the award rendered pursuant thereto was held unenforceable. *See Chimes v. Oritani Motor Hotel, Inc.*, 195 N.J.Super.

---

**3.** Subsequent AFM form contracts permit such an option.

435, 480 A.2d 218 (N.J.Super.Ct.1984) and *Graham, supra.*

The Supreme Court of California in *Graham,* while recognizing that nothing on the record before it indicated that the AFM arbitration procedure denies either party an opportunity to be heard, nevertheless found that:

> a contractual provision designating the union of one of the parties to the contract as the arbitrator of all disputes arising thereunder—including those concerning the compensation due under the contract—does not achieve the 'minimum levels of integrity' which we must demand of a contractually structured substitute for judicial proceedings. Such a provision, being inimical to the concept of arbitration as we understand it, would be denied enforcement in any circumstances; clearly it cannot stand in a case which, like that before us, requires the careful and searching scrutiny appropriate to a contract with manifestly adhesive characteristics.

*Graham,* 28 Cal.3d at 828, 623 P.2d at 178, 171 Cal.Rptr. at 617.

A New Jersey appellate court also called upon to review the AFM arbitration provision, held that it was void as being contrary to public policy, stating:

> In the circumstances we conclude that the so-called arbitration provision, giving the Board power to decide disputes between its members and defendant, is contrary to public policy. The relationship between the Board and its members is obviously too close to assure the dispassionate and impartial resolution of disputes between AFM members and non-members.

*Chimes,* 480 A.2d at 223.

Although the defendant correctly argues that this court is not bound by the decisions of state courts in New Jersey and California, the contract provision at issue is identical in all three cases, and the reasoning of the state courts applies equally in the case at bar. The partiality which is apparent from the procedure itself is made even more evident by the statistical study prepared by the plaintiff. An analysis of claims initiated by non-members against members reveals that approximately fifty-nine percent (59%) were decided in favor of the AFM member.[4]

## CONCLUSION

The evident partiality alleged under 9 U.S.C. § 10 stems from the pervasive control which the AFM union exerted over the entire arbitration procedure, and is supported by the statistics. The contract provided no option except AFM arbitration. Under the contract, the AFM selects the hearing referee, the hearing date and the hearing site. In this case, requests for alternate arbitrators, dates, and sites were refused. The AFM establishes the format, the rules, and the procedure. The AFM Executive Board even makes the final decision and hears any appeal. The integrity of arbitration as a neutral forum for the resolution of disputes was nowhere to be found in the procedure to which Taylor was subject. Therefore, it is the holding of this court that the defendant's motion to confirm and dismiss should be DENIED and the plaintiff's motion to vacate the arbitration award should be GRANTED. An order consistent with this opinion shall be entered this date.

---

**4.** Even more staggering is that of claims by members against non-members, ninety percent (90%) of the total number of claims analyzed, *eighty-two* percent (82%) were decided in favor of the member.