FLORES I. SALUD and ROSITA SALUD, Movants-Appellants, *v.* FINANCIAL SECURITY INSURANCE COMPANY, LTD., Respondent-Appellee

NO. 12868

(SPECIAL PROCEEDING NO. 87-0021)

OCTOBER 12, 1988

BURNS, C.J., HEEN AND TANAKA, JJ.

330

OPINION OF THE COURT BY TANAKA, J.

Claiming there was "evident partiality" on the part of the arbitrator, appellants Flores I. Salud (Flores) and Rosita Salud (Rosita) (collectively Appellants) appeal from the circuit court order denying their motion to vacate the arbitration award and the order granting the motion to confirm the award. We hold that Appellants have failed to show that the arbitrator was evidently partial within the meaning of Hawaii Revised Statutes (HRS) § 658-9(2) (1985)[1] and therefore affirm the circuit court orders.

I.

On April 3, 1982, Rosita was a passenger in an automobile driven by Maria Guerrerro (Guerrerro). The combined negligence of Guerrerro, by virtue of her speeding, and of the driver of an

---

[1] Hawaii Revised Statutes § 658-9 (1985) reads in its entirety as follows:

Vacating award. In the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or any of them;

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.

Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.

unidentified vehicle that attempted to get into their lane caused Guerrerro to lose control of her automobile, which landed in the cane field below the road. Rosita sustained fractures of three ribs, lacerations, and bruises.

On November 22, 1983, Guerrerro's liability insurance carrier paid $25,000 each to Rosita and Flores. In an arbitration proceeding between Appellants and appellee Financial Security Insurance Company, Ltd. (FSIC), Rosita sought an additional $50,000 for general and special damages and Flores sought an additional $50,000 for loss of consortium under FSIC's uninsured motorist coverage. After an arbitration hearing on August 4, 1986, the arbitrator rendered his award on January 9, 1987. Finding that Appellants had been fully compensated, the arbitrator ruled in favor of FSIC and awarded nothing to Appellants.

On January 19, 1987, Appellants commenced a special proceeding in the circuit court by filing a motion to vacate the arbitration award. On April 23, 1987, the court denied the motion. Although Appellants appealed, the supreme court dismissed the appeal for lack of appellate jurisdiction on November 10, 1987. *See Salud v. Financial Sec. Ins. Co.*, 69 Haw. ____, 745 P.2d 290 (1987).

Thereafter, on February 3, 1988, the circuit court granted Appellants' motion to confirm the award. Appellants' timely appeal followed.

## II.

Where a party challenges an arbitration award, the following precepts are applicable. First, "[b]ecause of the legislative policy to encourage arbitration and thereby discourage litigation," *Gadd v. Kelley*, 66 Haw. 431, 441, 667 P.2d 251, 258 (1983), arbitrators have broad discretion in resolving the dispute. Upon submission of an issue, the arbitrator has authority to determine the entire question, including the legal construction of terms of a contract or lease, as well as the disputed facts. *See Loyalty Dev. Co., Ltd. v. Wholesale Motors, Inc.*, 61 Haw. 483, 605 P.2d 925 (1980); *Ching v. Hawaiian Restaurants, Ltd.*, 50 Haw. 563, 445 P.2d 370 (1968). In fact, where the parties agree to arbitrate, "they thereby assume[] all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of

fact." *Mars Constructors, Inc. v. Tropical Enterprises, Ltd.,* 51 Haw. 332, 336, 460 P.2d 317, 319 (1969).

Second, correlatively, "judicial review of an arbitration award is confined to 'the strictest possible limits[.]' " *Gadd,* 66 Haw. at 441, 667 P.2d at 258 (quoting *Mars Constructors,* 51 Haw. at 335, 460 P.2d at 319). An arbitration award may be vacated only on "the four grounds specified in § 658-9" and modified and corrected only on "the three grounds specified in . . . § 658-10[.]" *Mars Constructors,* 51 Haw. at 336, 460 P.2d at 319. Moreover, the courts have "no business weighing the merits of the . . . award." *Local Union 1260 Int'l Bhd. of Elec. Workers v. Hawaiian Tel. Co.,* 49 Haw. 53, 58, 411 P.2d 134, 137 (1966).

Third, HRS §§ 658-9 and -10 "also restrict the authority of [appellate courts] to review judgments entered by circuit courts confirming the arbitration awards[.]" *Mars Constructors,* 51 Haw. at 336, 460 P.2d at 320.

### III.

Appellants contend that the arbitration award should have been vacated because there was "evident partiality" on the part of the arbitrator[2] within the meaning of HRS § 658-9(2).[3] Relying on a federal case holding that " 'evident partiality' . . . will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration[,]" *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2d Cir. 1984), Appellants proceed to review the evidence submitted in the arbitration proceeding and assert that the arbitrator "misrepresented" the medical evidence in his January 9, 1987 award. Appellants conclude therefrom that there was "evident partiality" in the arbitrator favoring FSIC. Both Appellants' methodology and conclusion are flawed.

---

[2] In moving to vacate the arbitration award in the circuit court, Appellants alleged that "the arbitrator was evidently partial, failed to take into account all the evidence presented, [and] exceeded his powers or imperfectly executed them[.]" Record at 6. The only ground urged on appeal, however, is the alleged evident partiality in the arbitrator.

[3] *See* note 1, *supra.*

## A.

A federal appellate court has stated that "[e]xactly what constitutes 'evident partiality' by an arbitrator is a troublesome question." *Morelite Constr. Corp.,* 748 F.2d at 82. Our supreme court has indicated that "[a] review of the legislative history of HRS § 658-9 fails to provide us with any insight as to the meaning of the phrase 'evidently partial.' " *Brennan v. Stewarts' Pharmacies, Ltd.,* 59 Haw. 207, 223 n.11, 579 P.2d 673, 682 n.11 (1978).

Section 10(b)[4] of the Federal Arbitration Act, 9 U.S.C. §§ 1-14 (1982), is the federal counterpart of HRS § 658-9(2). The federal cases construing 9 U.S.C. § 10(b) are helpful in the analysis of HRS § 658-9(2).

Most of the federal cases involve possible conflicts of interest arising from personal, professional, and business relationships between the arbitrator and a party, its counsel, principal, or agent, or from the arbitrator having a financial interest in the outcome of the arbitration, as indications of partiality. *See Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968) (the third arbitrator was discovered to have an undisclosed business relationship with the successful party to the arbitration); *Toyota of Berkeley v. Automobile Salesmen's Union Local 1095,* 834 F.2d 751 (9th Cir. 1987), *cert. denied,* ____ U.S. ____, 108 S. Ct. 2036, 100 L. Ed. 2d 620 (1988) (a party sued the arbitrator to enjoin him from deciding the dispute, and the arbitrator filed for sanctions against the party under Rule 11 of the Federal Rules of Civil Procedure); *Pitta v. Hotel Ass'n of New York City, Inc.,* 806 F.2d 419 (2d Cir. 1986) (an arbitrator decided a grievance that directly concerned his own employment); *Sheet Metal Workers Int'l Ass'n v. Kinney Air Conditioning Co.,* 756 F.2d 742 (9th Cir. 1985) (the arbitrator was alleged to have a financial interest in the outcome of the arbitration); *Morelite Constr. Corp., supra* (a father-son relationship existed between an arbitrator and an officer of one of the parties to

---

[4] 9 U.S.C. § 10(b) reads as follows:

In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon application of any party to the arbitration--

\* \* \*

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

the arbitration); *Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673 (7th Cir.), *cert. denied,* 464 U.S. 1009, 104 S. Ct. 529, 78 L. Ed. 2d 711 (1983) (both an arbitrator and the president of one of the parties formerly had been employed by another company); *Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140 (10th Cir.), *cert. denied,* 459 U.S. 838, 103 S. Ct. 84, 74 L. Ed. 2d 79 (1982) (the arbitrator had worked for a firm whose counsel was the same law firm representing one of the parties to the arbitration); *Tamari v. Bache Halsey Stuart Inc.,* 619 F.2d 1196 (7th Cir.), *cert. denied,* 449 U.S. 873, 101 S. Ct. 213, 66 L. Ed. 2d 93 (1980) (during the course of the arbitration hearings, the employer of one of the arbitrators hired a party's officer who testified in several of those hearings). In conflict of interest situations, the federal courts encourage disclosure by the arbitrators since failure to make appropriate disclosures may justify the vacation of an award. *See Commonwealth Coatings Corp., supra; Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 699 (2d Cir. 1978).

A federal district judge has stated that 9 U.S.C. § 10(b) "is confined to situations where the arbitrator has had dealings or relationships with one of the parties that might cause him to be biased." *Reichman v. Creative Real Estate Consultants, Inc.,* 476 F. Supp. 1276, 1284 (S.D. N.Y. 1979). Nevertheless, the federal courts have considered other alleged indicia of "evident partiality" advanced by the unsuccessful party to an arbitration. *See* Annot., 20 A.L.R. Fed. 295 (1974). For example, disappointed parties have claimed "evident partiality" because of the arbitrator's actions and omissions during the course of the arbitration proceedings, although without much success. *See Fairchild & Co., Inc. v. Richmond, Fredericksburg & Potomac R.R. Co.,* 516 F. Supp. 1305 (D.D.C. 1981) (one of the arbitrators displayed hostility toward a party's counsel, manifested by rudeness and interruptions during the proceedings); *Sidarma Societa Italiana Di Armamento Spa v. Holt Marine Industries, Inc.,* 515 F. Supp. 1302 (S.D. N.Y.), *aff'd,* 681 F.2d 802 (2d Cir. 1981) (two of the three arbitrators refused to allow the other to reopen the arbitration hearings); *Cities Service Oil Co. v. American Mineral Spirits Co.,* 22 F. Supp. 373 (S.D. N.Y. 1937) (the arbitrator was sympathetic with one party's witnesses and hostile to those of the other party). However, an unsuccessful party was able to vacate an award where a union exerted a "pervasive control . . . over the entire arbitration

procedure[.]" *Taylor v. Nelson,* 615 F. Supp. 533, 537 (W.D. Va. 1985), *vacated on other grounds,* 788 F.2d 220 (4th Cir. 1986).

## B.

We are aware of only two cases decided by the supreme court in which HRS § 658-9(2) was involved. They are *Brennan v. Stewarts' Pharmacies, Ltd.,* 59 Haw. 207, 579 P.2d 673 (1978), and *Gadd v. Kelley,* 66 Haw. 431, 667 P.2d 251 (1983).

In *Brennan,* the losing party to the arbitration (Shopping Center) moved to vacate the award and the winning party (Stewarts') moved to confirm the award. Concluding, *inter alia,* that "Mr. Carter, the arbitrator appointed by Stewarts['], could not possibly serve as an impartial arbitrator within the meaning of HRS § 658-9(2)," *Brennan,* 59 Haw. at 210, 579 P.2d at 675 (footnote omitted), the circuit court vacated the award. The facts indicated that Stewarts' had hired Carter to negotiate on its behalf with Shopping Center the rent for the second ten-year period of its lease. Upon failure of the negotiation, Stewarts' invoked arbitration as provided for in the lease and appointed Carter as its arbitrator. The facts further indicated that during the three-member panel arbitration proceedings, Carter acted as an advocate for Stewarts'. On appeal, the supreme court held:

> Where an arbitrator, though appointed by the party, identifies himself personally with his party and with his party's prejudices and needs, . . . the conclusion is unavoidable that, the arbitrator has lost sight of his duty as an arbitrator, and is unable to act as an arbitrator.

*Id.* at 223, 579 P.2d at 682.

Like *Brennan,* *Gadd* involved an arbitration to determine the lease rent. In appealing the confirmation of the arbitration award, the lessees contended, *inter alia,* that the award should have been vacated since the arbitrators "were guilty of misconduct and partiality[.]" *Gadd,* 66 Haw. at 440-41, 667 P.2d at 258. The supreme court held that the circuit court's findings that "the arbitrators never had any financial interest in the outcome of the decision; the arbitrators never identified with the interests, prejudices, and the needs of either party; and the arbitrators never refused to hear

testimony or refused to allow the presentation of evidence" were not clearly erroneous. *Id.* at 442, 667 P.2d at 259.

## C.

Although Appellants contend that there was "evident partiality" in the arbitrator within the meaning of HRS § 658-9(2), there has been no showing of any conflict of interest arising from a personal, professional, or business relationship between the arbitrator and FSIC, its counsel, principal, or agent, or from the arbitrator having any financial interest in the outcome of the arbitration, as required by federal case law. There is nothing in the record indicating that the arbitrator identified himself personally with FSIC and its prejudices and needs, as occurred in *Brennan.*

The only indication of partiality advanced by Appellants is that the arbitrator's findings are not supported by, and actually "misrepresent," the medical evidence presented in the arbitration proceedings. In our view, this is merely a guise to obtain judicial review of the merits of the award, which is not authorized by our arbitration statute. "[N]othing in the statute intimates [that] the merits of an arbitration award are judicially reviewable." *Morrison-Knudsen Co., Inc. v. Makahuena Corp.,* 66 Haw. 663, 671, 675 P.2d 760, 766 (1983). This remains true even if "the arbitrators may make mistakes in the . . . findings of fact." *Mars Constructors, Inc.,* 51 Haw. at 336, 460 P.2d at 319.

This case is unlike *Brennan* in which the pre-arbitration relationship between arbitrator Carter and Stewarts', coupled with the actions of Carter during the arbitration proceedings, led to the finding that Carter was "evidently partial." In *Brennan,* there was no judicial review of the evidence on the merits presented at the arbitration hearing.

Moreover, the "reasonable person" test utilized in *Morelite Constr. Corp., supra,* does not give Appellants a license to seek a judicial review of the evidence submitted at the arbitration hearing. That case presented an alleged conflict of interest because the arbitrator was the son of an officer of one of the parties to the arbitration. Since "the unique role of arbitrators, whose special expertise arises from wide experience in their fields, sometimes leads to a gain of their professional knowledge and skill at the cost of the

appearance of less than complete impartiality[,]" *Pitta v. Hotel Ass'n of New York City, Inc.,* 806 F.2d at 423, the court in *Morelite Constr. Corp.* refused to adopt a *per se* rule regarding personal relationships. Rather, the court applied the "reasonable person" test and, based on the record in the case, held "that sons are more often than not loyal to their fathers, partial to their fathers, and biased on behalf of their fathers." *Id.* at 84. Thus, Appellants' reliance on *Morelite Constr. Corp.* is misplaced.

## IV.

Appellants further contend that the arbitrator was evidently partial against Appellants because of their racial background. The record does not support this contention.

When the arbitrator was deposed, Appellants' counsel asked him whether he considered the fact that Appellants were Filipinos in awarding nothing to them.[5] The arbitrator replied, "That was one of the facts, among all the facts, that I considered." Record at 126. Appellants claim this indicated that the arbitrator was racially biased against them.

However, the record discloses that immediately thereafter the following question was asked and answered.

Q. Thank you sir. And did you consider the fact that counsel of the claimants is a Filipino in arriving at your award of zero?

A. Both of those are facts that I was aware of, but the racial background of either of the parties played no part in my decision in whether to award something or nothing. I would have made the same decision whether they had been Caucasian or any other racial background. That had no part whatsoever in my decision.

Record at 126.

We thus hold that the arbitrator's deposition testimony does not prove "evident partiality" in the arbitrator on racial grounds.

---

[5] " 'Post-verdict' examinations of a judicial or quasi-judicial officer, be he judge, juror, or arbitrator, for the purpose of impeaching his decision, are inherently suspect, indeed, roundly condemned, in our system of jurisprudence[.]" *Reichman v. Creative Real Estate Consultants, Inc.,* 476 F. Supp. 1276, 1286 (S.D. N.Y. 1979).

338

V.

Accordingly, we affirm the orders of the circuit court.

*Erlinda Dominguez* and *Thomas J. Kaster* on the briefs for movants-appellants.

*Robert P. Richards* and *Lisa K.Y. Pang (Davis, Reid & Richards,* of counsel) on the brief for respondent-appellee.