Nicholas M. Pette, J.
The petitioner moves for the confirmation of an award by arbitrators in his favor and against the respondent, who opposes confirmation thereof.
It appears that respondent, who has been engaged in the watch bnsiness, and who had had various business dealings with the petitioner, during the last week of September or the first week of October, 1957, purchased $32,000 worth of watch movements from the petitioner and paid $6,000 on account when the merchandise was delivered to him. He claims that although he requested a bill of sale at the time of said transaction, petitioner stated that he would give him one as soon as petitioner received a bill of sale from his seller. Eespondent further claims, that on October 14,1957, the aforesaid merchandise was forcibly taken from him by armed robbers, and that soon thereafter he called petitioner, who came to respondent’s home accompanied by petitioner’s brother, whereupon respondent explained what had happened and informed petitioner that he was about to report the matter to the police, but before doing so, he would need the promised bill of sale as evidence *578 of Ms ownership and in order to more accurately describe the make and exact quantity of the stolen watch movements.
Respondent also claims, the petitioner then pleaded with him not to inform the police, as he, the petitioner would get in trouble; that petitioner, despite questioning by respondent refused to elaborate any further; that petitioner, in the presence of his brother, then stated that if respondent would pay him an additional $10,000, thereby making the total payment $16,000, petitioner would waive the debt and consider the matter settled, inasmuch as they would then equally share the burden of loss. Respondent also claims, that although his suspicion was then aroused as to the legality of petitioner’s possession and ownership of said merchandise, nevertheless, because of the circumstances, respondent paid petitioner the additional $10,000 in several cash installments during the following week, for which payments petitioner refused to give him receipts, since petitioner urged that he did not want to have anything in writing concerning the transaction.
Respondent further claims that he heard nothing further from the petitioner until December, 1957, when petitioner, in violation of the said agreement of waiver, demanded an additional $16,000 and threatened physical violence to respondent and his family if he were not paid; that after heated controversy, respondent agreed to submit the matter to a Rabbinical Tribunal which would decide the controversy in accordance with the procedure and laws of the Torah.
It appears that on Sunday, February 2, 1958, the parties and the two Rabbis whom each party had selected as their arbitrators met at the home of the presiding Rabbi of this constituted Rabbinical Tribunal, at which time the parties signed the agreement referred to as Exhibit “A” in petitioner’s affidavit, pursuant to which they agreed to submit their disputes to said tribunal of three Rabbis.
It is respondent’s contention, that at no time during the hearings held by said arbitrators, were they sworn to ‘ ‘ faithfully and fairly hear and examine the matters in controversy and to make a just award according to the best of their understanding ”. The respondent further contends that soon after the hearing commenced, it became apparent that the arbitrators had no interest or desire in hearing the full presentation of respondent’s case, and that despite respondent’s insistence, the arbitrators refused to inquire into the basic question of petitioner’s OAvnership of the merchandise aud of the possible *579 illegality which tainted the entire transaction. He further contends, that at one time during the hearing respondent was ordered to leave the room while the petitioner remained alone with the arbitrators for approximately one-half hour, during which time, petitioner undoubtedly was permitted to give testimony which respondent had no opportunity to rebut; that respondent, convinced that the hearing was not being conducted in a fair and impartial manner then telephoned his wife, who thereupon called the presiding Rabbi and complained about the treatment being accorded to respondent; that it was then agreed that the hearing be adjourned for several weeks, at which time respondent would be permitted to fully state his case; that before the parties departed, however, and pursuant to the demand of this Rabbi, petitioner and respondent each paid him $75 for a total of $150 in payment of the Rabbis’ fees as arbitrators.
Respondent further contends, that, thereafter, on Sunday, March 2, 1958, he returned to the home of the presiding Rabbi, accompanied by his wife, and the hearing was resumed by said three Rabbis; that again the irregularities of the prior proceeding became evident; that although requested by respondent, the arbitrators refused to summon as a witness the petitioner’s brother, who was present on the occasion when petitioner allegedly agreed to waive the debt, whose testimony was pertinent and material to the controversy; that the hearing was continued, but the arbitrators refused to inquire into the question of petitioner’s ownership of the subject merchandise and the question of illegality, and refused to inquire into all of the facts surrounding the waiver of the debt; that at this point respondent stated he was leaving because it was apparent that the tribunal was not interested in hearing his story; that the presiding Rabbi demanded and each party paid him $75 for the Rabbis ’ fees, and then respondent and his wife left the hearing.
Respondent further claims that approximately one month after the meeting of March 2, 1958, he received a telepUone call from one of the arbitrators, who informed him that the Rabbis were going to issue a written decision against respondent, and he stated that he was going to sign the decision because if he refused he would never be permitted to sit as a judge in future cases and he needed the income he received from these proceedings.
In opposing confirmation of the award herein, the respondent urges that because of the irregularities and improprieties of the proceedings before the arbitrators, the award cannot be held *580 to be binding upon him according to the doctrines of Talmudic law, for the following reasons:
(a) the tribunal refused to summon and question an essential witness to the controversy, although duly requested to do so by respondent;
(b) the tribunal conferred privately with the petitioner without the presence of the respondent;
(c) the tribunal refused to give respondent an opportunity to question the petitioner;
(d) the tribunal refused to inquire into the question of possible illegal and criminal nature of the subject matter of the controversy which, if substantiated, would bar plaintiff from any relief in accordance with Talmudic law.
The respondent contends that the award is not entitled to judicial confirmation for the following reasons:
(1) the arbitrators were guilty of such misconduct in refusing to hear evidence pertinent and material to the controversy as will vitiate the award and require the court to set it aside. (Civ. Prac. Act, § 1462, subd. 3.)
(2) the award is a nullity and unenforcible because respondent has been seriously prejudiced by the denial of his right to representation. (Civ. Prac. Act, § 1454, subd. 1.)
(3) the award is unacknowledged and is not entitled to judicial enforcement. (Civ. Prac. Act, § 1460.)
(4) an award based upon an illegal contract is null and void and cannot be enforced.
(5) the hearings being held on Sunday are illegal and void and the award rendered therein is judicially unenforcible. (Judiciary Law, § 5.)
(6) the entire arbitration proceedings are invalid for the failure of the arbitrators to be duly sworn as required by law. (Civ. Prac. Act, § 1455.)
(7) the arbitrators demanded and accepted fees prior to the rendition of their award in excess of the fees allowed to a like number of'Referees in the Supreme Court, and such action was clearly improper and constituted misbehavior.
The petitioner contends that respondent’s tale of the alleged robbery was a creation of a fertile mind, but is fictional and not factual; that when he began pressing respondent for payment, respondent offered all sorts of excuses, and that he even returned a portion of the goods after the alleged robbery; that under Talmudic law, if he was robbed, petitioner was required to *581 sustain a portion of the loss, and in order to bring the matter to a head, and upon respondent’s insistence, petitioner agreed to submit the controversy to three Rabbis who would determine the issue.
Although no record has been submitted on this motion, of the proceedings held by the three arbitrators, nor any transcript of any minutes taken, if any, of the hearings, it is of some significance that while petitioner contends that respondent returned some of the merchandise respondent claims to have been stolen and that respondent received a credit therefor, petitioner fails to specify the merchandise allegedly returned and fails to mention the amount of said credit. Furthermore, nowhere in petitioner’s affidavit does he state that he gave respondent any bill or memorandum of the sale of said merchandise, and the invoices petitioner has annexed to his affidavit refer to watches and not to watch movements, and .several of them are dated subsequent to September, 1957, the time petitioner has stated that he sold the watch movements to respondent. It is also significant, that the petitioner has not submitted any supporting affidavits from the members of the tribunal to refute respondent’s claims of the irregularity of their proceedings, especially since no transcript of any testimony or record of the proceeding, if any were made, has been submitted to this court for examination.
The petitioner does not dispute that hearings were held on Sundays, nor does he dispute that the award is not acknowledged, or that the arbitrators failed to give the oath required by law; also, petitioner has not denied that his demands for payment were accompanied by. threats of physical violence to deponent and his family, a record of which the respondent claims is on file with the local police precinct house at 59th Street and 16th Avenue, Brooklyn.
It appears that the award herein is written in Hebrew; an English translation of which has been submitted by petitioner. It further appears that the award is not acknowledged; that hearings were held on Sunday and that the oath required by statute was not given by the arbitrators. Petitioner contends, that the failure to acknowledge the award is without merit, since it is sworn to by the arbitrators, and the fact that hearings were held on Sunday, does not void the proceedings; also that the failure of the arbitrators to give their oath is without merit, since Orthodox Rabbis do not take an oath. It is significant however, that they did swear to the award, which is taking an oath to the truth thereof.
*582 Arbitration is a judicial proceeding and the arbitrators perform a judicial function (Matter of Fletcher, 237 N. Y. 440; Fudickar v. Garden Mut. Life Ins. Co., 62 N. Y. 392, 399), and since their award may be final and conclusive in respect of many issues which in a court of law are subject to review, it is imperative that every safeguard be utilized to insure fairness and impartiality in fact and that the arbitrators’ impartiality be above suspicion. (Matter of Friedman, 215 App. Div. 130, 136.) Though they may not be judges in name, they are judicial officers acting in a “ quasi-judicial capacity and should possess the judicial qualifications of fairness to both parties so that they may render a faithful, honest and disinterested opinion.” {American Eagle Fire Ins. Co. v. New Jersey Ins. Co., 240 N. Y. 398, 405.)
Before going into the merits of the controversies between the parties in the instant proceeding, perhaps it may not be amiss to observe that the arbitrators have been summoned to perform one of the most solemn duties of life — that of judging between man and man. Arbitrators are also the product of our times, prone to the same errors and failings of those in other fields of endeavor, and they therefore should approach the matters submitted for their determination with great caution and humility, and unselfishly decide the same, without sympathy, partiality, bias or prejudice, strictly upon the evidence adduced before them, so that true justice between the parties in controversy may be served.
Since arbitration is a judicial proceeding and arbitrators perform a judicial function, the arbitration proceedings and award herein were void upon the ground that hearings held on Sunday were in violation of section 5 of the Judiciary Law. {Matter of Brody [Owen], 259 App. Div. 720 and cases cited supra.)
While an award made on Sunday by arbitrators of the Jewish faith, in settlement of a religious dispute, has been held valid {Isaacs v. Beth Hamedash Soc., 1 Hilt. 469 [1857]), the issues submitted for arbitration in the case at bar, did not involve any religious dispute, but was concerned with a dispute over a business transaction.
Under the provisions of section 1460 of the Civil Practice Act, the award must be in writing and subscribed by the arbitrators making it, acknowledged, or proved and certified as a deed to be recorded. {Sanford Laundry v. Simon, 285 N. Y. 488.) There can be no question that the award in the case at bar is utterly lacking in the requirements of this statute, *583 and consequently is unenforcible, in which circumstance the court will deny a motion to confirm the award. (Okun v. Levine, 68 N. Y. S. 2d 164; Wagner v. Russeks Fifth Ave., 85 N. Y. S. 2d 779, 781.)
The demanding and receiving of fees prior to the completion of their decision by arbitrators was improper and constituted such misconduct as to justify the court in denying the motion to confirm their award. (Matter of Hub Inds. [George Mfg. Corp.], 269 App. Div. 177; Schechter v. Atlas Shirt Co., 86 N. Y. S. 2d 220.) Furthermore, the fees the arbitrators demanded and received, were in excess of the fees prescribed by statute, and in the absence of a waiver of the statute so fixing their fees, such conduct was also improper and cannot be countenanced by the court. (Civ. Prac. Act, §§ 1457, 1546.)
The refusal to hear pertinent and material evidence of witnesses constitutes misconduct sufficient to vitiate an award in arbitration proceedings. (Gervant v. New England Fire Ins. Co., 306 N. Y. 393; Halstead v. Seaman, 82 N. Y. 27.)
All grounds for vacating an award may be urged in opposition to the motion to confirm the award. (Matter of Brody [Owen], 259 App. Div. 720, supra.)
If the arbitrators ordered the respondent from the hearing room and permitted petitioner to remain there for approximately one-half hour, during which time he -was undoubtedly permitted to give testimony which respondent had no opportunity to explain or rebut, as charged by the respondent, such conduct would be prejudicial and justify the court in setting aside their decision.
Arbitrators cannot conduct ex parte hearings or receive evidence except in the presence of each other and of the parties, unless otherwise stipulated. (Berizzi Co. v. Krausz, 239 N. Y. 315; Matter of Buitoni Prods. v. Nappi, 275 App. Div. 215.) Also the arbitrators ’ refusal to call a material witness or receive material evidence will not be condoned.
The failure of the arbitrators to be duly sworn as required by law has been held to be fatal and voids the entire proceedings. (Hinkle v. Zimmerman, 184 N. Y. 114; Matter of St. John’s Guild [Durkin & Laas], 168 App. Div. 889; Matter of Keppler v. Nessler, 225 App. Div. 99; Leiken & Sons v. R-G-R Const. Corp., N. Y. L. J., Dec. 31, 1953, p. 1610, col. 3.)
The court is satisfied that upon the undisputed facts in the case at bar, and in the light of the authorities, the award herein cannot be. confirmed and must be vitiated, in which circumstance, arbitration proceedings de novo should be conducted by *584 a new board off three arbitrators, one to be selected by each of the parties, and if the parties be so advised, the third arbitrator, to be appointed by the court, in which case the order to be entered herein will so provide.
Accordingly the motion to confirm the award is denied, without prejudice to arbitration proceedings de novo as above stated.
Settle order on five days’ notice.