773 F.Supp. 1259 (1991)
M & A ELECTRIC POWER COOPERATIVE, Plaintiff,
v.
LOCAL UNION NO. 702 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, Defendant.
No. 90-0138-C.
United States District Court, E.D. Missouri, Southeastern Division.
August 23, 1991.
*1260 David W. Welch, Robert A. Kaiser, Daniel O'Toole, Lashly & Baer, St. Louis, Mo., for plaintiff.
Sally E. Barker, Schuchat, Cook & Werner, St. Louis, Mo., for defendant.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff M & A Electric Power Cooperative ("M & A") is in the business of supplying electrical power to other member cooperatives. Defendant Local Union No. 702 ("Local 702") is a labor union that represents 27 of M & A's employees. M & A and Local 702 are parties to a collective bargaining agreement effective March 1, 1987 to February 28, 1990. In accordance with the provisions of the collective bargaining agreement, M & A and Local 702 submitted a dispute to arbitration concerning the discharge of an employee. On September 29, 1990 the arbitrator issued a decision in favor of Local 702. M & A refused to comply with the award and filed a complaint in federal court seeking vacatur of the award pursuant to the United States Arbitration Act, 9 U.S.C. § 1 et seq. Local 702 filed a counterclaim seeking enforcement of the award. This cause is before the Court on Local 702's motion for summary judgment and M & A's cross-motion for summary judgment. The parties agree that there are no disputes as to material facts and the action is ripe for resolution.
On October 6, 1989 M & A discharged Charles Allen Hardin. On October 12, 1989 Local 702 filed a grievance on Hardin's behalf. When the parties were unable to resolve the grievance, they submitted the grievance to arbitration pursuant to Article III of the collective bargaining agreement. The parties selected Beryl M. Carlew through the Federal Mediation and Conciliation Service ("FMCS") to serve as arbitrator *1261 of the dispute. On June 14, 1990 a hearing was held in Poplar Bluff, Missouri. The parties stipulated that this issue to be arbitrated was whether M & A had cause to discharge Hardin. If M & A was found not to have cause, the arbitrator was to determine an appropriate remedy. At the hearing the parties examined and cross-examined witnesses and produced documentary evidence.
M & A set forth seven reasons why it had cause to discharge Hardin, three of which involved the operation of cranes. M & A asserted that a primary reason for Hardin's discharge involved Hardin's participation in what is called "the gin pole incident." The "gin pole incident" occurred when a pole lifted by a crane almost injured workers on the site and almost damaged the crane that lifted it. Local 702 asserted that the "gin pole incident" was caused by a crane operator who lifted the pole too high before determining that the pole was attached properly to the lift cable of the crane. M & A asserted that "gin pole incident" was caused by Hardin's failure to attach the pole to the lift cable properly.
Although not presented as a reason for discharge, M & A discussed at the hearing an incident involving a runaway crane in April, 1988. Hardin was the lead man on a crew when a large crane was driven onto a steep sloped driveway. The crane was utilized in such a manner that it did not have sufficient braking power. The crane ran down the hill and the operator was ejected and injured.
The arbitrator, in his decision, addressed each of the reasons set forth by M & A for Hardin's discharge. After his discussion of the runaway crane incident, the arbitrator revealed that he had consulted an unnamed party concerning the attribution of fault for the operation of a crane. The consultation occurred after the hearing and without the knowledge or consent of either M & A or Local 702. The arbitrator stated:
To further reinforce my crane training and experience I have just made inquiry (without divulging my reasons) of an International Officer of the Operating Engineers Union, who in the past has been both an instructor for among others, crane operators and a safety instructor in their apprentice school.
In response to my question as to who is responsible for both the operation and the safety of the crane, the operator or the supervisor of a crew which has a crane in the crew. He unequivocally stated, "the crane operator".
Arbitrator's Award at 17-18.
The arbitrator's post-hearing consultation was a violation of his own rules and the procedural regulations of the FMCS. At the beginning of the hearing the arbitrator stated:
I will follow certain procedures. For example, I insist on having witnesses sworn in. I have nothing but sworn testimony here before us.
Title 29 C.F.R. § 1404.14, which applies to all arbitrators listed on the FMCS list of arbitrators, provides that "the arbitrator's decision is to be based upon the evidence and testimony presented at the hearing."
In his decision to reinstate Hardin, the arbitrator focused on the fact that Hardin had twenty years of service with plaintiff at the time of his discharge, and that Hardin did not have the benefits of progressive disciplinary sanctions or an opportunity for rehabilitation. The arbitrator stated:
Cases involving discharge are scrutinized very carefully (especially for a 20 year service employee) to see if progressive discipline has been utilized, has even handed discipline been applied to all employees and has there been a concerted effort to rehabilitate a long service employee.
In this case there was only one instance of this, which resulted in a 6 month probationary period and after the 3rd (one each month) session the supervisor thought that the employee had progressed for enough, that he asked that the employee files remain clean. This was done.
A business continues to function even with the absence of the CEO, on an extended vacation, certain violations either real or imagined began to occur and instead *1262 of those that remained in control acting, they decided to not handle the issues one at a time  but rather to build up a secret file (the Grievant was never disciplined for any of the actions for which he was fired).
There is no question that the Grievant was a less than model employee, but he did not deserve to be fired. Especially without a chance to shape-up as the events happened. The punishment should fit the crime.
The employee therefore is to be put back to work....
Arbitrator's Award at 18-19. Also, throughout the decision the arbitrator noted that Hardin was the only employee discharged for the incidents although other employees who were either more at fault or equally at fault for the mishaps were not disciplined.
The scope of a district court's review of an arbitration award is limited. Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche International, Ltd., 683 F.Supp. 945, 948 (S.D.N.Y.1988), aff'd, 888 F.2d 260 (2d Cir.1989). Courts may vacate an arbitration award only upon a showing of one of the statutory grounds listed in the Arbitration Act, 9 U.S.C. § 10, or if the arbitrator acted in manifest disregard of the law, or if the award is incomplete, ambiguous, or contradictory. Transit Cas. Co. v. Trenwick Reinsurance Co., 659 F.Supp. 1346, 1350 (S.D.N.Y.1987), aff'd, 841 F.2d 1117 (2d Cir.1988). The burden of proof rests squarely on the party attempting to vacate the arbitration award. Id. at 1351.
M & A asserts that the Court should vacate the arbitration award pursuant to Section 10(c) of the Arbitration Act, 9 U.S.C. § 10(c). Section 10(c) states that a court may vacate an arbitrator's award
[w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.[1]
(Emphasis added).
It is clear that the arbitrator's post-hearing consultation constituted misbehavior. "Arbitrators cannot ... receive evidence except in the presence ... of the parties, unless otherwise stipulated." Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F.2d 649 (5th Cir.1979) (quoting, Katz v. Uvegi, 18 Misc.2d 576, 583, 187 N.Y.S.2d 511, 518 (Sup.Ct.1959), aff'd, 11 A.D.2d 773, 205 N.Y.S.2d 972 (App.Div.1960)). The arbitrator's post-hearing consultation violated his own rules and the procedural rules of the FMCS. Furthermore, the arbitrator deprived the parties of the opportunity to examine and cross-examine the unnamed union officer on his opinion concerning the attribution of fault for the operation of the crane.
The Court's finding that the arbitrator's post-hearing consultation constituted misbehavior is not dispositive. In order to vacate an arbitration award, the misbehavior of the arbitrator must be such that the party seeking vacatur was deprived of a fair hearing. Grahams Service Inc. v. Teamsters Local 975, 700 F.2d 420, 422 (8th Cir.1982); Reichman v. Creative Real Estate Consultants, Inc., 476 F.Supp. 1276, 1285 (S.D.N.Y.1979). M & A cites Stefano Berizzi Co. v. Krausz, 239 N.Y. 315, 146 N.E. 436 (1925) ("Berizzi"), and Totem Marine Tug & Barge v. North Am. Towing ("Totem"), supra, as authority for its position that it did not receive a fair hearing.
In Berizzi the parties submitted to arbitration a dispute concerning the sale of bamboo skewers. Plaintiff agreed to sell and defendant agreed to buy 8,000 cases of bamboo skewers. Upon delivery the defendant refused to pay for them, urging various excuses and finally defects of quality. The matter was submitted to arbitration. The arbitrator conducted a hearing in *1263 which the parties examined and cross examined witnesses. After the hearing was closed, the arbitrator conducted his own investigation in which he discussed the quality of the skewers with his own salesmen and with other persons in the industry who reported that the skewers were unsalable and useless. Although the arbitrator admitted that his decision was based upon his personal investigation as well as the testimony received during the hearing, the Court found that "what he did by himself and without notice, was the real basis for his decision." 239 N.Y. at 317, 146 N.E. 436.
In Totem a panel of arbitrators decided that Totem had breached an agreement concerning the charter of a boat and awarded damages to North American, the boat owner. The arbitrators sought to reduce the damage award by the earnings of the boat during the period of the charter agreement. After the hearing the arbitrators discovered that each had a different figure in his notes for the earnings of the boat during that period. Without the knowledge or consent of Totem, the arbitrator on the panel selected by North American telephoned counsel for North American concerning the earnings of the boat. Counsel for North American supplied a figure that was different from each of the three figures in the notes of the three arbitrators. The arbitrators used the figure supplied by North American's counsel in their calculation of damages. Counsel for Totem was not notified of the ex parte contact and was not given an opportunity to respond to the figure supplied by North American.
The decisions in Berizzi and Totem are distinguishable on the ground that the arbitrator(s) in those cases performed post-hearing inquiries and relied heavily on the results of those inquiries in their ultimate decisions. In the instant matter a review of the arbitrator's decision reveals that the decision to reinstate Hardin was based upon Hardin's long-term employment with M & A, M & A's failure to discipline Hardin progressively, M & A's failure to provide Hardin with an opportunity for rehabilitation, and M & A's propensity to discipline Hardin, but not other employees, accountable for the incidents. Although M & A asserts that the post-hearing consultation tainted the entire decision, the text of the arbitrator's decision reveals otherwise. The arbitrator, who is experienced in the operation of cranes and capable of attributing fault for the crane mishaps based on that experience,[2] made a brief and rather general inquiry of another person with extensive crane experience.[3] The response of the union officer corroborated that of the arbitrator. Because the Court believes that the source of the arbitrator's decision is based upon the testimony and other evidence presented at the hearing, the Court concludes that M & A was not deprived of a fair hearing by the arbitrator's misbehavior.
For the foregoing reasons, the Court grants Local 702's motion for summary judgment to enforce the decision of the arbitrator and denies M & A's cross motion for summary judgment to vacate the decision of the arbitrator.
NOTES
[1] On November 15, 1990 9 U.S.C. § 10 was amended. The amendment renumbered but did not otherwise alter the text of § 10(c).
[2] It is not an impropriety for an arbitrator to draw upon his experience with cranes in deciding the dispute. Dampskibs/selsk Dannebrog v. Strange & Co., 1 F.Supp. 380, 382 (S.D.N.Y.1932). One of the chief merits claimed for arbitration as a method of settling controversies is the opportunity of having the matter decided by experts in the particular field. Id.
[3] M & A also alleges that it was deprived of a fair hearing because the arbitrator consulted a union officer. The Court disagrees. First, the arbitrator stated that he did not divulge the reasons for his inquiry to the union officer. Second, because the crane operator and crew supervisor are both union, the union officer should not be biased against either in attributing fault.