993 P.2d 568

Joseph M. SOUSARIS, Individually; as Special Administrator of the Estate of Rosemary J. Sousaris, deceased; and as Prochein Ami of Michael J. Sousaris and Nicholas A. Sousaris, minors, Claimant–Appellee,

v.

Barry D. MILLER, M.D., dba Center for Cosmetic Surgery, Respondent–Appellant, and John Does 1–10, Jane Does 1–10, Doe Corporations 1–10, Doe Partnerships 1–10, Doe "Non–Profit" Organizations 1–10, and Doe Governmental Agencies 1–10, Respondents.

No. 21167.

Intermediate Court of Appeals of Hawai'i.

Dec. 30, 1998.

Certiorari Granted Jan. 28, 1999.

Opinion of the Court by BURNS, C.J.

Respondent–Appellant Barry Miller, M.D. (Dr. Miller), dba Center for Cosmetic Surgery, appeals the circuit court's (1) August 14, 1997 Order Granting Petition of Joseph M. Sousaris, Individually; as Special Administrator of the Estate of Rosemary J. Sousaris, Deceased; and as Prochein Ami of Michael J. Sousaris and Nicholas A. Sousaris, Minors, to Confirm Arbitration Award, Filed July 8, 1997 and Denying Petition of Respondent Barry D. Miller, M.D., dba Center for Cosmetic Surgery to Vacate Arbitration Award and for Permission to Conduct Discovery, Filed July 16, 1997 (August 14, 1997 Order Denying Motion to Vacate and Order Confirming Award) and (2) September 5, 1997 Order Denying Motion to Reconsider Order Denying Respondent Barry D. Miller's Motion to Vacate Arbitration Award or, in the Alternative for Relief from Order Confirming Arbitration Award, Filed August 8, 1997 (September 5, 1997 Order Denying Reconsideration). We affirm.

This opinion discusses and/or applies the rules governing and limiting (a) the circuit court's authority regarding a party's (i) motion to vacate an arbitration award, and (ii) attempt to amend a timely filed and served motion to vacate; and (b) the authority of the appellate courts regarding the circuit court's order confirming an arbitration award and denying a motion to vacate.

Francis T. O'Brien, on the briefs, Honolulu, for respondent-appellant.

L. Richard Fried, Jr., and John D. Thomas, Jr. (Cronin, Fried, Sekiya, Kekina & Fairbanks), on the briefs, Honolulu, for claimants-appellees.

BURNS, C.J., WATANABE, J., and Circuit Judge WENDELL HUDDY in place of ACOBA, J.

**1.** The Patient–Physician Arbitration Agreement stated in relevant part as follows:

> Any controversy or claim arising out of or relating to said medical care shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

## BACKGROUND

Rosemary Sousaris (Rosemary) and Dr. Miller entered into a Patient–Physician Arbitration Agreement (Arbitration Agreement)[1] signed by Rosemary on November 20, 1995 and by Dr. Miller on December 19, 1995 prior to Dr. Miller performing liposuction surgery on Rosemary on January 5, 1996. Joseph M. Sousaris, individually; as Special Administrator of the Estate of Rosemary J.

\* \* \*

> In the event that I contest the validity of this Agreement and fail to prevail in that contest, I will be responsible for any and all attorney's fees and costs reasonably incurred by the Center For Cosmetic Surgery in that contest.

Sousaris, deceased; and as Prochein Ami of Michael J. Sousaris and Nicholas A. Sousaris, minors, (Sousaris) brought a negligence claim against Dr. Miller seeking damages for Rosemary's death which allegedly resulted from Dr. Miller's medical negligence during the liposuction and post-operative care through January 12, 1996.

Pursuant to the Arbitration Agreement, Sousaris' negligence claim was submitted to arbitration. The Arbitration Agreement designated a three-member panel consisting of a lawyer, a local business person, and a physician. Peter Char, Esq. (Char), Kathy Muller (Muller), and Ronald Peroff, M.D. (Dr. Peroff) comprised the panel for this claim.

In part, the relevant American Arbitration Association form contains the following:

1. The names of the arbitrating parties and the attorneys representing them.

2. A Notice of Appointment directed to Dr. Peroff stating in relevant part as follows:

> You have been selected to arbitrate in the above case. If you are able to accept this responsibility, please sign and return.

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties or their counsel, direct or indirect, whether financial, professional, social or of any other kind.

3. A handwritten response by Dr. Peroff disclosing that "I know both of the attorneys, Mr. Fried [L. Richard Fried, Jr. (Fried)] and Mr. Quinn [Richard K. Quinn (Quinn)]. I was defended in a case by Mr. Quinn in which Mr. Fried represented the plaintiff."

4. The Arbitrator's Oath.

5. Dr. Peroff's signature.

The arbitration hearings were held between June 3, 1997 and June 6, 1997 and the attorneys made final summation on June 12, 1997. Arbitrator Muller decided that Dr. Miller was not negligent. The July 7, 1997 Award of Arbitrators (Award of Arbitrators) states in relevant part as follows:

### The Award

As to liability of [Dr. Miller], two of the Arbitrators find that a preponderance of the evidence supports [Sousaris'] contention that [Dr. Miller] was actionably negligent in his care and treatment of [Rosemary]. All of the arbitrators agree that the evidence does not support [Dr. Miller's] contention that [Rosemary] was negligent or assumed the risk of her death and that Tripler Army Medical Center was negligent in its care and treatment of [Rosemary] between Friday, January 12, 1996 and Thursday, January 18, 1996. Therefore, the following sums are awarded to [Sousaris] as follows:

| | | |
|---|---|---|
| 1. | The Estate of [Rosemary], deceased: | |
| | Last medical bills | $ 73,666.31 |
| | Funeral/burial expenses | $ 12,110.13 |
| | Conscious pain and suffering | $ 50,000.00 |
| 2. | JOSEPH M. SOUSARIS | $ 750,000.00 |
| 3. | MICHAEL J. SOUSARIS | $ 375,000.00 |
| 4. | NICHOLAS J. SOUSARIS | $ 375,000.00 |
| | TOTAL AWARD: | $1,635,776.44. |

Therefore, [Dr. Miller] shall pay to [Sousaris] the total sum of [$1,635,776.44].

The administrative fees and expenses of the American Arbitration Association, totaling [$7,000.00], shall be borne by the parties equally....

The fees for the remuneration of the arbitrators, totaling [$30,774.67], shall be borne by the parties equally.

On July 8, 1997, Sousaris filed a petition to confirm the arbitration award (Petition to Confirm). Dr. Miller opposed the Petition to Confirm and, on July 16, 1997, filed his petition to vacate arbitration award (Petition to Vacate). The basis for Dr. Miller's Petition to Vacate was his affidavit dated July 15, 1997 stating that he received a phone call from an unknown person informing him that the caller had "observed Dr. Peroff and Mr. Fried playing tennis."

Fried responded with his July 23, 1997 affidavit stating in relevant part as follows:

> [T]he only distinct recollection I have of playing against Dr. Peroff was in a tennis tournament at the time that I was representing the plaintiffs in a case in which he was a named defendant wherein I represented the plaintiffs and Mr. Richard K. Quinn, Esq. represented Dr. Peroff. This

occurred, to the best of my knowledge, approximately 10 years ago. I have only a vague recollection of having possibly played Dr. Peroff on one other occasion but that occasion, if it occurred, would have been again in a tournament setting, a situation in which neither of us would have arranged the match. I have never played tennis with Dr. Peroff on any occasion other than the one tournament that I do recall and with the possible exception of a second tournament, both of which were many years ago.

Dr. Peroff's representations in his July 22, 1997 affidavit were consistent with Fried's representations in his affidavit.

At the August 1, 1997 hearing on the Petition to Confirm and the Petition to Vacate, the circuit court orally granted the Petition to Confirm and denied the Petition to Vacate. The circuit court decided "that the evidence presented fails to establish evident partiality or even a reasonable impression of partiality ... which would warrant vacating the award in this case." The August 14, 1997 Order Denying Motion to Vacate and Order Confirming Award followed.

On August 8, 1997, Dr. Miller filed a Motion to Reconsider Order Denying Respondent Barry D. Miller's Motion to Vacate Arbitration Award or, in the Alternative for Relief from Order Confirming Arbitration Award (Motion to Reconsider or for Relief). This Motion to Reconsider or for Relief alleged a new ground for vacating the arbitration award based on new evidence that allegedly was not available until after the August 1, 1997 hearing on the original Petition to Vacate. Dr. Miller alleged that Dr. Peroff consulted with other medical experts outside of the hearing and that these consultations constituted prejudicial misconduct on the part of Dr. Peroff. Dr. Miller submitted a declaration from attorney Richard K. Quinn who represented him at the arbitration proceedings. Quinn's declaration states in relevant part as follows:

2. After receiving the Award of the Arbitrators, I spoke with Arbitrator Kathy Muller, the sole Arbitrator who voted in favor of Dr. Miller. She told me that she could not understand the decision of the other Arbitrators. She said that it seemed to her like they had attended a different hearing than she had.

3. Subsequent to my receipt of the Award, I likewise attempted to speak with [Dr. Peroff]. I was interested to hear his analysis of the evidence....

\* \* \*

6. I called Dr. Peroff at 10:27 a.m. HST on August 1, 1997....

7. Attached hereto as Exhibit "A" is a true and correct transcript of my notes of my conversation with Dr. Peroff. I did not record the conversation by electronic means. I speed-write, and I wrote my notes while Dr. Peroff and I were speaking. My notes reflect exact words used by Dr. Peroff and accurately reflect the substance of our entire conversation.

Quinn's notes state in relevant part as follows:

[Quinn]: I just wanted to find out how you came to the conclusions you did.

[Dr. Peroff]: Here's a lady who has a procedure and ends up in septic shock a week later. There has to be some connection there.

\* \* \*

Then, the question was who to believe, Jud or the fellow from San Diego. I had an advantage over the other two. I started to ask questions about suctioning and what happens when you touch the bowel with suction. The feedback I got—and I didn't just take one person's word for it. If you get a total of 10, it starts to sway you.

In terms of the numbers and the suction, I asked the people who are in the pits—who do surgery all the time. They said that suction picks up the bowel occasionally, and you have to turn the suction off.

He said he used one atmosphere, and in the operating room, they only run at 200–300 mm. So, I looked and asked. At one-third atmosphere, it would pick

up the bowel. So, at one atmosphere, it would certainly pick up the bowel. So, I started thinking that he had to have known that he pulled that through, based on its being at one atmosphere.

I've known Jud for a long time. He's brilliant, but you have to check on his details, because I knew him as a resident.

I checked and got a consensus of opinions and picked holes here and there.

When I looked at Jud's C.V., the C.V. was really impressive, but you have to look at what he says and see how it fits the picture. Some of the stuff he brought up didn't jive with what the people in the O.R. said.

\* \* \*

[Dr. Peroff]: . . .

I got Jud to admit that she was in septic shock. I asked Bill Lau and someone else in infectious disease: "With these parameters—a normal temperature and an okay white blood count despite septic shock—what's going on?" They said that those normal values were a bad sign.

I asked at least three general surgeons: "What is the salvage rate of septic shock?" It matched more with what Launer said—not Jud, who said, "we save them all."

Bill Lau said the salvage rate is 30–50%. Launer said she wasn't salvageable, despite what was done at Tripler and at that place in Texas.

\* \* \*

[Dr. Peroff]: . . .

So, I had the advantage. I'm not afraid to ask people's opinions. There's nothing like talking to guys with experience.

\* \* \*

[Dr. Peroff]: . . .

\* \* \*

In [Dr. Miller's] case, he must have penetrated and sucked bowel back and not realized it, and the patient died.

Dr. Miller specifies nine facts from this "transcript" which he alleges illustrate the prejudice to him resulting from Dr. Peroff's outside consultation:

(1) That in deciding which expert to believe [Dr. Peroff] "had an advantage" over the other two arbitrators.

(2) That he asked people "who do surgery all the time" and was told "that suction picks up the bowel occasionally, and you have to turn the suction off."

(3) That the people he spoke with "run at" ⅓ atmosphere and told him at that pressure the suction would pick up the bowel. From this he concluded that at one atmosphere it would "certainly" pick up the bowel.

(4) That he spoke to many more than one physician—and as many as 10 and was "swayed" by what they told him.

(5) That he obtained a "consensus of opinions" from those unnamed doctors.

(6) That he discounted some of Dr. McNamara's testimony based upon "what the people in the O.R. said," and used the "consensus" opinions to "pick holes" in what Dr. McNamara said.

(7) That he spoke to "Bill Lau and someone else in infectious disease" about the symptoms showed by [Rosemary].

(8) That he asked "at least three general surgeons" about the "salvage rate of septic shock" and discounted Dr. McNamara's testimony based upon what he was told.

(9) That he felt that "[T]here's nothing like talking to guys with experience[.]"

In contrast, Dr. Peroff's August 14, 1997 affidavit states in relevant part as follows:

2. The decision that I reached in this case is based solely upon my evaluation of the evidence presented at the hearing of this case and upon my evaluation of the credibility of the witnesses and documentary evidence. My decision is not based in any way upon the information or knowl-

edge obtained from any source outside the evidence presented at the hearing, other than my medical training, background, experience and common sense.

3. Based upon my medical training, background and experience, I concluded that bowel can be picked up and moved by the suction created from surgical instruments until the suction is turned off. Based upon my own medical training, background and experience and evaluation of the evidence presented at the hearing, I concluded that [Rosemary] was in septic shock at the time [of] her admission to Tripler Army Medical Center and that the salvage rate for septic shock is less than 50%.

4. I contacted other physicians to confirm that these conclusions that I had reached based upon my own medical training and experience and upon my evaluation of the evidence presented at the hearing of this case were consistent with the experiences of other physicians. I did not contact other physicians for the purpose of learning additional information that was not contained in the evidence presented at the hearing, nor for the purpose of resolving disputed issues, but simply to confirm the conclusions that I had drawn and the decisions that I had reached.

5. . . . Because of my relationship with [Quinn], because the decision directly affected another medical doctor, and because the decision would become known to my medical colleagues, I wanted to be able to comfortably justify the conclusions and decisions that I had independently reached based upon the evidence presented at the hearing with the experiences of other doctors. In this way I felt comfortable with my ability to explain the basis for my decision to [Quinn] and to my medical colleagues.

6. When [Quinn] originally called me after the arbitration award was issued, I was advised by [Char] not to discuss the award with the attorneys until it became final 10 days after the award was issued. When I spoke with [Quinn] about the case on August 1, 1997, [Quinn] did not tell me that he would be using the conversation for the purpose of setting aside the arbitration award. Because of my relationship with [Quinn], I spoke to him in detail about the case. I wanted him to know that the decision which I had reached based solely upon my consideration of the evidence presented at the hearing was based upon sound medical judgment and evaluation, and was consistent with the medical experience of others. I did not mean to suggest nor imply in any way that the decision which I reached and the award which I voted for in this case were based upon any information other than the evidence presented at the hearing and my independent evaluation of that evidence.

On August 20, 1997, Sousaris filed a memorandum in opposition to Dr. Miller's Motion to Reconsider or for Relief in which he argued that (1) Dr. Miller's motion is untimely because it was not brought within ten days of the award as required by Hawai'i Revised Statutes (HRS) § 658–11 (1993); (2) it is proper for an arbitrator to consult with neutral professionals to corroborate his own conclusions; and (3) Dr. Peroff's statements are inadmissible to impeach his ruling.

On September 5, 1997, the circuit court entered its order denying Dr. Miller's Motion to Reconsider or for Relief in which it noted that the motion was a nonhearing motion.

### RELEVANT SECTIONS OF HRS, CHAPTER 658 (1993)

§ 658–8 **Award; confirming award.** The award shall be in writing and acknowledged or proved in like manner as a deed for the conveyance of real estate, and delivered to one of the parties or the party's attorney. A copy of the award shall be served by the arbitrators on each of the other parties to the arbitration, personally or by registered or certified mail. At any time within one year after the award is made and served, any party to the arbitration may apply to the circuit court specified in the agreement, or if none is specified, to the circuit court of the judicial circuit in which the arbitration was had, for an order confirming the award. Thereupon the court shall grant such an order, unless the award is vacated, modified, or

corrected, as prescribed in sections 658–9 and 658–10. The record shall be filed with the motion as provided by section 658–13, and notice of the motion shall be served upon the adverse party, or the adverse party's attorney, as prescribed for service of notice of a motion in an action in the same court.

§ 658–9 **Vacating award.** In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or any of them;

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.

Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.

§ 658–10 **Modifying or correcting award.** In any of the following cases, the court may make an order modifying or correcting the award, upon the application of any party to the arbitration:

(1) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;

(2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;

(3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof, and promote justice between the parties.

§ 658–11 **Notice of motion to vacate, modify, or correct; stay.** Notice of a motion to vacate, modify, or correct an award, shall be served, in the manner prescribed for service of notice of a motion in an action, upon the adverse party or the adverse party's attorney within ten days after the award is made and served. For the purposes of the motion any judge who might make an order to stay the enforcement of a judgment, in an action brought in the same court, may make an order to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award. The record shall be filed with the motion as provided by section 658–13.

§ 658–12 **Entry of judgment.** Upon the granting of an order, confirming, modifying, or correcting an award, the same shall be filed in the office of the clerk of the circuit court and this shall constitute the entry of judgment. An appeal may be taken from such judgment as hereinafter set forth.

\* \* \*

§ 658–15 **Appeal when.** Unless the agreement for award provides that no appeal may be taken an appeal may be taken from an order vacating an award, or from a judgment entered upon an award, as from an order or judgment in an action, otherwise no appeal may be had.

POINTS OF ERROR

First, Dr. Miller contends that Dr. Peroff's social relationship with Fried that was not disclosed to the parties constituted "evident partiality" under HRS § 658–9(2) and the circuit court should have granted time for discovery and an evidentiary hearing.

Second, Dr. Miller contends that Dr. Peroff violated the arbitration agreement by consulting numerous physicians about factual

questions raised in the hearing out of the presence of the parties and the other arbitrators and used the information during the hearings and in arriving at his final decision. Dr. Miller argues that these actions constituted misconduct and/or prejudicial behavior under HRS § 658–9(3); therefore, the circuit court should have granted an evidentiary hearing on Dr. Miller's Motion to Reconsider or for Relief.

## RIGHT TO APPEAL ARBITRATION AWARDS

The right to appeal is statutory and "exists only when given by some Constitutional or statutory provision." *Chambers v. Leavey,* 60 Haw. 52, 57, 587 P.2d 807, 810 (1978). HRS § 658–15 authorizes the appeal of arbitration awards. It does not allow an appeal from an order denying a petition to vacate an award. *Salud v. Financial Security Ins. Co.,* 69 Haw. 427, 431, 745 P.2d 290, 292 (1987) (hereinafter *Salud I* ). It allows an appeal from a confirmation order. *Id.*

## RULES PERTAINING TO JUDICIAL REVIEW OF ARBITRATION AWARDS

Where a party challenges an arbitration award, the following precepts are applicable. First, "[b]ecause of the legislative policy to encourage arbitration and thereby discourage litigation," *Gadd v. Kelley,* 66 Haw. 431, 441, 667 P.2d 251, 258 (1983), arbitrators have broad discretion in resolving the dispute. Upon submission of an issue, the arbitrator has authority to determine the entire question, including the legal construction of terms of a contract or lease, as well as the disputed facts. *See Loyalty Development Company, Ltd. v. Wholesale Motors, Inc.,* 61 Haw. 483, 605 P.2d 925 (1980); *Ching v. Hawaiian Restaurants, Ltd.,* 50 Haw. 563, 445 P.2d 370 (1968). In fact, where the parties agree to arbitrate, "they thereby assume[ ] all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact." *Mars Constructors, Inc. v. Tropical Enterprises, Ltd.,* 51 Haw. 332, 336, 460 P.2d 317, 319 (1969).

Second, correlatively, "judicial review of an arbitration award is confined to 'the strictest possible limits[.]' " *Gadd,* 66 Haw. at 441, 667 P.2d at 258 (quoting *Mars Constructors,* 51 Haw. at 335, 460 P.2d at 319). An arbitration award may be vacated only on "the four grounds specified in [HRS] § 658–9" and modified and corrected only on "the three grounds specified in . . . [HRS] § 658–10[.]" *Mars Constructors,* 51 Haw. at 336, 460 P.2d at 319. Moreover, the courts have "no business weighing the merits of the . . . award." *Local Union 1260 International Brotherhood of Electrical Workers v. Hawaiian Tel. Co.,* 49 Haw. 53, 58, 411 P.2d 134, 137 (1966).

Third, HRS §§ 658–9 and –10 "also restrict the authority of [appellate courts] to review judgments entered by circuit courts confirming the arbitration awards[.]" *Mars Constructors,* 51 Haw. at 336, 460 P.2d at 320.

*Salud v. Financial Security Ins. Co.,* 7 Haw. App. 329, 331–32, 763 P.2d 9, 10–11, *cert. denied,* 70 Haw. 664, 796 P.2d 501 (1988) (hereinafter *Salud II* ).

## DISCUSSION

### 1.

## ARBITRATOR PLAYING TENNIS WITH PLAINTIFF'S COUNSEL

■ Dr. Miller initially raised the subject of his first point of error in his opposition to the Petition for Confirmation. Dr. Miller alleged that Dr. Peroff and Fried had a social relationship that Dr. Peroff did not disclose to the parties. This allegation of a "social relationship" was based on a statement made to Dr. Miller by an unknown person who informed Dr. Miller that Dr. Peroff and Fried were observed playing tennis together. In response, Dr. Peroff and Fried each denied they had a financial, professional, social, or other relationship with each other. The only recollection that they had of playing tennis together was when they were matched against each other through the tournament draw in one or two tournaments a long time ago. Dr. Miller alleges that this "relationship" shows evident partiality on the part of

Dr. Peroff to Fried and Fried's client Sousaris.

Hawai'i has used federal case law as a guideline of what constitutes evident partiality. *Salud II*, 7 Haw.App. at 336, 763 P.2d at 11. *Salud II* identified three different criteria that would amount to evident partiality: 1) conflict of interest arising from a personal, professional, or business relationship between the arbitrator and any parties, their counsel or agents; 2) a financial interest in the outcome of the arbitration; or 3) identifying personally with any party, its counsel or agents. *Schmitz v. Zilveti*, 20 F.3d 1043, 1046 (9th Cir.1994), held that "evident partiality is present when undisclosed facts show a reasonable impression of partiality." (Internal quotations omitted.) The slight association that Dr. Peroff and Fried had many years ago in one or two tennis tournaments does not even rise to a relationship let alone a relationship that shows a reasonable impression of partiality, and it does not satisfy any of the three criteria listed in *Salud II*.

Dr. Miller requested time for discovery and an evidentiary hearing regarding his Petition to Vacate. The circuit court's denial of discovery and an evidentiary hearing was proper because there were not any material facts in dispute. Both Dr. Peroff and Fried acknowledged that many years ago they had played tennis in a tournament setting and Dr. Miller's allegation was that an unknown person had seen the Peroff and Sousaris' counsel playing tennis together. Therefore, an evidentiary hearing was not called for under *Clawson v. Habilitat, Inc.*, 71 Haw. 76, 783 P.2d 1230 (1989).

## 2.

### ARBITRATOR CONSULTING MEDICAL EXPERTS NOT IN THE PRESENCE OF ALL THE ARBITRATORS AND ALL OF THE PARTIES

Dr. Miller seeks an order vacating the Award of Arbitrators pursuant to HRS § 658-9(3) or relief from the Order Confirming Award because of Dr. Peroff's alleged misconduct or misbehavior which allegedly prejudiced the rights of Dr. Miller.

Section 31 of the American Arbitration Association's Commercial Arbitration Rules require, in relevant part, that "[a]ll evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent in default or has waived the right to be present."

Dr. Miller cites to *Totem Marine Tug & Barge, Inc. v. North Am. Towing, Inc.*, 607 F.2d 649 (5th Cir.1979), in support of his contention that Dr. Peroff's actions constitute a basis for vacating the arbitration award. In *Totem*, after the hearings had closed, but before the decision was reached, the arbitration panel contacted the counsel for one of the parties to ascertain counsel's figure regarding his client's earnings since all three members of the arbitration panel had different figures. *Totem*, 607 F.2d at 652. The figure given by counsel was different from any of the arbitrators' figures. Neither the opposing party or its counsel was notified of this contact nor given an opportunity to contest the figure supplied to the arbitrators. *Id.* The panel used that figure to determine the award in that case. *Id.* The *Totem* court concluded that the ex parte communication by the arbitrators constituted misconduct and prejudiced the opposing party's rights and vacated the arbitration award. *Id.* at 653.

Dr. Miller also cites *M & A Electric Power Coop. v. Local Union 702, Int'l Bhd. of Elec. Workers*, 773 F.Supp. 1259 (E.D.Mo.1991), aff'd 977 F.2d 1235 (8th Cir.1992), to illustrate arbitrator misconduct. In that case, without notification to either party, the arbitrator consulted with an unnamed person concerning the attribution of fault in a certain situation. The arbitrator stated in his written arbitration award that this consultation took place after the hearings but before the decision was announced and the purpose of the consultation was to "reinforce" his own training and experience. *M & A Electric*, 773 F.Supp. at 1261. The court concluded that the arbitrator's post-hearing consultation with the outside party constituted misbehavior since the arbitration rules provided that evidence could only be received in the presence of the parties unless otherwise stipulated. *Id.* at 1262. However, the court

concluded that the arbitrator's misconduct did not deprive either party of a fair hearing "[b]ecause the Court believes that the source of the arbitrator's decision is based upon the testimony and other evidence presented at the hearing" and the response the arbitrator received from the outside party corroborated the arbitrator's decision. *Id.* at 1263.

In support of his position, Sousaris cites to *Dessy–Atco, Inc. v. Youngset Fashions, Inc.*, 205 N.Y.S.2d 577, 578 (N.Y.Sup.Ct.1960) which states, "Where evidence is gathered ex parte and is merely confirmatory of earlier testimony upon which the arbitrators were warranted in basing their award, there is no misconduct." In *Dessy–Atco*, the arbitrators received evidence to determine insurance, storage and trucking charges and the court found that "the proof was not vitiated in the least because the arbitrators ex parte confirmed the amounts" before they announced the decision. *Id.*

Dr. Peroff's affidavit states that he "contacted other physicians to confirm that these conclusions that [he] had reached based upon [his] own medical training and experience and upon [his] evaluation of the evidence presented at the hearing of this case where consistent with the experiences of other physicians." Dr. Peroff does not say in his affidavit whether he consulted the other physicians before or after the panel of arbitrators reached their decision or announced it.

In material contrast, Quinn's speed-written notes of the conversation between Quinn and Dr. Peroff indicate that Dr. Peroff consulted the other physicians before Dr. Peroff made his decision and before the panel made its decision and that these consultations influenced Dr. Peroff's decision.

Thus, it appears that material facts are in dispute. "[W]henever material facts are in dispute in determining whether an arbitration award should be vacated, the circuit court should conduct an evidentiary hearing and render findings of fact and conclusions of law in support of granting or denying the motion to vacate the arbitration award." *Clawson*, 71 Haw. at 79–80, 783 P.2d at 1232.

It has been concluded that we review the circuit court's denial of Hawai'i Rules of Civil Procedure Rule 59(e) motions for reconsideration under the abuse of discretion standard. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992). Nevertheless, we review findings of fact under the clearly erroneous standard, and questions of law under the right/wrong standard.

3.

## ADMISSIBILITY OF ARBITRATOR'S STATEMENTS

"It is clear that the testimony of the arbitrators is not competent to impeach the *mental process* involved in determining the award." *Carolina–Virginia Fashion Exhibitors, Inc. v. Gunter*, 291 N.C. 208, 230 S.E.2d 380, 384 (1976).

In some jurisdictions,

[i]t is the general rule that an arbitrator may not by affidavit or testimony impeach his own award or show fraud or misconduct on the part of the arbitrators. However, a dissenting arbitrator, the award not being his, may testify as to bias, partiality, or other misconduct of the arbitrators who render the award, the same as any other witness. And a party who fails to enter timely objection to impeaching testimony of an arbitrator, and who, by cross-examination or by independent testimony of other arbitrators, attempts to meet such evidence, estops himself from urging such objection subsequently, and the court cannot disregard such testimony, although it results in impeachment of the award.

4 Am.Jur.2d *Alternative Dispute Resolution* § 255 (1995) (footnotes omitted). Based on this authority, Sousaris argues that Dr. Peroff's statements are not admissible to impeach the arbitration award. However, assuming the first sentence of this authority states the rule applicable in Hawai'i, Sousaris is wrong.

In this case, Dr. Miller submitted his attorney's affidavit which included his attorney's "transcript" of a phone conversation between himself and Dr. Peroff. It was by way of this reported conversation that Dr. Miller learned of Dr. Peroff's consultation with third parties. Sousaris did not timely object to this attempt by Dr. Miller to use

Dr. Peroff's own words to impeach the Award of Arbitrators. Instead, Sousaris submitted a sworn affidavit by Dr. Peroff admitting Dr. Peroff's inquiries of other medical experts but stating that these inquiries were solely to confirm the conclusions Dr. Peroff already had drawn and the decisions he had already reached. In other words, Sousaris responded to Dr. Miller's evidence of Dr. Peroff's statements with Dr. Peroff's admission that he had made some of the statements and did consult other medical experts but contradicted Dr. Miller's assessment of the purpose and effect of those consultations. Sousaris thereby estopped himself from objecting to the use of the evidence of Dr. Peroff's statements to impeach the Award of Arbitrators. Moreover, the testimony of Arbitrator Muller or the medical experts whom Dr. Peroff had consulted would be admissible as evidence to impeach the arbitration award if and to the extent it shows the misconduct of Dr. Peroff.

Alternatively, it may be that the first sentence of the above quote from 4 Am.Jur.2d *Alternative Dispute Resolution* § 255 does not state the rule applicable in Hawai'i. It may be that the rule stated in *Carolina–Virginia Fashion Exhibitors, Inc., supra,* is the rule applicable in Hawai'i. If applied in Hawai'i, that rule would be as follows: where an objective basis exists for a reasonable belief that one or more of the grounds specified in HRS § 658–9 for vacating an arbitration award has occurred, all relevant testimony, including the testimony of any one or more of the arbitrators, is admissible as evidence for or against confirming or vacating the award.[2]

2. In a published Article, two researchers concluded that their review of the scope and limits of arbitral immunity reveals that the doctrine is alive and well. The only limitations on immunity are these:

(1) Arbitrators, like all other citizens, are liable for any crimes they commit;

(2) Arbitrators are liable for negligence or breach of contract if they totally fail to perform their obligations;

(3) Arbitrators who violate a person's constitutional or civil rights, an unlikely event, might be subject to injunctive or declaratory relief; and

(4) Arbitrators might be compelled to testify or produce documents (a) when they fail to

4.

## TIMELINESS OF THE MOTION FOR RECONSIDERATION

In this case, the relevant events occurred as follows:

| | |
|---|---|
| July 7, 1997 | Award of Arbitrators |
| July 8, 1997 | Petition to Confirm |
| July 16, 1997 | Petition to Vacate |
| August 1, 1997 | Oral denial of the Petition to Vacate and oral grant of the Petition to Confirm |
| August 8, 1997 | Motion to Reconsider the oral denial of the Petition to Vacate and the grant of the Petition to Confirm |
| August 14, 1997 | Entry of the Order Denying Motion to Vacate and Order Confirming Award |
| August 25, 1997 | Oral denial of the August 8, 1997 Motion to Reconsider |
| September 5, 1997 | Entry of the Order Denying Reconsideration |
| September 15, 1997 | Notice of Appeal of the August 14, 1997 order and the September 5, 1997 order |

Sousaris contends that Dr. Miller's August 8, 1997 motion is an untimely attack on the Award of Arbitrators and the August 14, 1997 Order Denying Motion to Vacate and Order Confirming Award.

It appears that the Award of Arbitrators was "made and served" on July 7, 1997. HRS § 658–11 allowed Dr. Miller "ten days after" July 7, 1997 to serve "[n]otice of a motion to vacate, modify, or correct and award[.]" Therefore, the July 16, 1997 Petition to Vacate was timely.

make a timely assertion of their testimonial privilege; (b) when the request does not pertain to the arbitrator's decisional process, for example, if it involves only formal information about the scope of the submission, the evidence introduced, or the conduct of other persons; or (c) when the request involves the arbitrator's own misconduct and the moving party has previously demonstrated an "objective basis" for a "reasonable belief" that the asserted misconduct actually occurred.

Nolan and Abrams, *Arbitral Immunity,* 11 Indus. Rel. L.J. 228, 260–61 (1989).

The precedent for limitation (4)(c) is *Carolina–Virginia Fashion Exhibitors, Inc. v. Gunter,* 291 N.C. 208, 230 S.E.2d 380 (1976).

The July 16, 1997 Petition to Vacate was based solely on the alleged fact that one arbitrator and plaintiff's counsel had played tennis together (Ground A). On August 8, 1997, after the court orally denied the July 16, 1997 Petition to Vacate and orally granted the July 8, 1997 Petition to Confirm but before it entered its August 14, 1997 judgment, Dr. Miller filed a motion for reconsideration based solely on the alleged fact that one arbitrator had privately consulted medical experts during the arbitration process (Ground B). On August 14, 1997, before the court heard Dr. Miller's motion for reconsideration asserting ground B, it entered its order denying the Petition to Vacate which asserted Ground A and its order confirming the Award of Arbitrators. Thereafter, on September 5, 1997, the court entered its order denying the motion for reconsideration which asserted Ground B.

■ The dispositive question is: Does the fact that a party timely filed a motion to vacate based on Ground A within the HRS § 658–11 ten-day period then permit the party after the expiration of the HRS § 658–11 ten-day period, after the hearing and the oral denial of the motion to vacate and the oral granting of the motion to confirm the arbitrator's award, but prior to entry of the written order to, in effect, amend the motion to vacate by asserting ground B? In other words, once a party gives timely notice of a motion to vacate, is that party permitted the time between the expiration of the ten-day period and the entry of the order denying the motion to vacate and granting the motion to confirm the arbitrators' award to add to the grounds asserted in the motion to vacate? Our answer is no.

HRS § 658–11 very specifically allows only the period "within ten days after the award is made and served" for service of "[n]otice of a motion to vacate, modify, or correct an award[.]" It does not permit amendments of such motions after the ten days. As stated by the Hawai'i Supreme Court, "[w]e reiterated in *Jeffers [Association of Apartment Owners of Tropicana Manor v. Jeffers,* 73 Haw. 201, 830 P.2d 503 (1992)] that in order to change an award under HRS chapter 658, a party must timely move either to vacate

the award under HRS § 658–9 or to modify or correct it under HRS § 658–10." *Excelsior Lodge Number One v. Eyecor, Ltd.,* 74 Haw. 210, 222, 847 P.2d 652, 658 (1992).

This rule is not unique to Hawai'i. As noted in 4 Am.Jur.2d *Alternative Dispute Resolution* § 253 (1995) (footnote omitted), "[i]t appears that a party who had a valid ground for challenging an award but who fails to raise that challenge within the statutory time limit is not permitted to raise that challenge when the opponent applies for confirmation of the award." The reason for this rule is that, "[i]n order to comply with the purpose of expeditious resolution of disputes through arbitration, time limits in which to challenge arbitration awards must be strictly enforced." *Knass v. Blue Cross of California,* 228 Cal.App.3d 390, 395, 279 Cal.Rptr. 124, 126 (1991).

To allow Dr. Miller to oppose the confirmation by raising Ground B after expiration of the HRS § 658–11 ten-day period would render the HRS § 658–11 ten-day period meaningless. We note that HRS § 658–8 permits up to one year after the award was made and served to apply for a confirmation order.

In light of our conclusion that Dr. Miller is not authorized to assert Ground B as a ground in support of his Petition to Vacate, his Petition to Vacate is without merit. Lacking a meritorious petition to vacate, Dr. Miller cannot escape from the following mandate stated in HRS § 658–8:

> At any time within one year after the award is made and served, any party to the arbitration may apply to the circuit court ... for an order confirming the award. Thereupon, the court shall grant such an order, unless the award is vacated, modified, or corrected, as prescribed in sections 658–9 and 658–10.

### CONCLUSION

Accordingly, we affirm the circuit court's (1) August 14, 1997 Order Granting Petition of Joseph M. Sousaris, Individually; as Special Administrator of the Estate of Rosemary J. Sousaris, Deceased; and as Prochein Ami of Michael J. Sousaris and Nicholas A. Sousaris, Minors, to Confirm Arbitration Award,

Filed July 8, 1997 and Denying Petition of Respondent Barry D. Miller, M.D., dba Center for Cosmetic Surgery to Vacate Arbitration Award and for Permission to Conduct Discovery, Filed July 16, 1997 and (2) September 5, 1997 Order Denying Motion to Reconsider Order Denying Respondent Barry D. Miller's Motion to Vacate Arbitration Award or, in the Alternative for Relief from Order Confirming Arbitration Award, filed August 8, 1997.